NIXON *v.* STATE

[No. 134, October Term, 1953.]

476

*Decided May 21, 1954.*

The cause was argued before DELAPLAINE, COLLINS, HENDERSON and HAMMOND, JJ.

*Ellis Levin* and *J. Calvin Carney,* with whom were *Blanchard D. Carney, Calman A. Levin* and *Louis M. Strauss,* on the brief, for appellant.

*Ambrose T. Hartman,* Assistant Attorney General, with whom were *Edward D. E. Rollins,* Attorney General, and *C. Osborne Duvall,* State's Attorney for Anne Arundel County, on the brief, for appellee.

HENDERSON, J., delivered the opinion of the Court.

Marcus Ray Nixon was tried by the court and a jury in the Circuit Court for Anne Arundel County on a charge of murder. The verdict was guilty of murder in the first degree, without capital punishment, and he was sentenced to life imprisonment. On appeal, it is urged that the evidence was legally insufficient to support a verdict of murder, although it is conceded that manslaughter was established. It is also urged that there was error in the rulings upon the admissibility of evidence.

The fatal shooting in this case occurred on August 27, 1953, at about 11 P.M. outside of Clark's Restaurant,

located on Annapolis Road at Seventh Street, opposite Fort Meade in Anne Arundel County. Nixon had been a soldier, stationed at Fort Meade in 1951, and had been on terms of intimacy with one Grace Hicks. She accompanied him to Tacoma, Washington, in 1952, but returned to Maryland when he was sent overseas, and was employed as a waitress at Clark's Restaurant. There she became intimate with another soldier named Lassiter. When Nixon returned from overseas in June, 1953, he visited her on leave, and she told him "how she felt" about Lassiter. There was testimony that Lassiter picked a fight with him at that time. Nixon was discharged from the service at Fort Bragg on August 22, 1953, returned to Maryland, and "dated" Grace Hicks.

It was shown that on August 25, 1953, Nixon purchased a twenty-two caliber target pistol, which he testified he intended to use for target practice and to protect himself against possible robbery. However, Grace Hicks testified that he threatened to kill her with it. Anna Walker, another waitress at Clark's Restaurant, testified that on the very day of the shooting Nixon exhibited the pistol to her and threatened to kill both Grace Hicks and Lassiter with it. She told him: "You are kidding." On the evening of August 27, 1953, Nixon drove to the restaurant in his car, and approached the screen door in the rear. Lassiter was inside with Grace Hicks, Anna Walker and Marvin Lowman. Nixon called Grace Hicks and Lassiter some ugly names and Lassiter went out and struck him twice with his fist, whereupon Nixon fired two shots, with fatal results. Nixon then drove off in his car and was picked up later by the police.

Anna Walker, who followed Lassiter out of the door, saw the blows struck and heard the "explosions." She denied that Lassiter used any knife, stick or other weapon, but admitted she saw a stick "near where the body was lying" after the shooting. Lowman testified that Lassiter picked up a slicing knife before he went out, though he may have put it down again. He testi-

fied that Anna Walker told him Lassiter picked up a waxer handle outside the door and struck Nixon with it. Anna Walker denied making this statement. Trooper Wells testified he found a waxer handle lying close to the body of the deceased, and a knife lying on top of a box beside the door. Nixon took the stand and testified that he made no threats against Grace Hicks or Lassiter; that he did not call them any names; that Lassiter came out with a knife in his belt, attacked him with a stick and beat him severely; that the blows made him dizzy, and he did not remember firing the pistol. He "pulled" the gun only to frighten Lassiter. He was afraid Lassiter was going to kill him.

We find no merit in the appellant's contention as to the insufficiency of the evidence to show malice or premeditation. The testimony as to the motive, the purchase of the pistol and the threats to use it, the testimony that he came to the scene armed and by his abusive language provoked an altercation with Lassiter, are enough to require submission of these issues to the jury. Cf. *Chisley v. State*, 202 Md. 87, 104-107, 95 A. 2d 577, 585; *Grammer v. State*, 203 Md. 200, 225-226, 100 A. 2d 257, 268; and *Davis v. State*, 204 Md. 44, 52, 102 A. 2d 816, 820. It is true that there is authority for the proposition that a killing in the heat of passion, upon sufficient provocation or without premeditated design, and particularly while resisting an unlawful and violent assault, is only manslaughter. *Davis v. State, supra.* But the provocation must be great and the violence extreme to justify the use of a deadly weapon, and the question is usually one for the jury. Here there was evidence, if believed, of both premeditation and conduct inciting the assault. See *Hanye v. State*, 99 Ga. 212, 25 S. E. 307; *State v. Inks*, 135 Mo. 678, 37 S. W. 942; *Addington v. United States*, 165 U. S. 184, and cases cited in 1 *Warren on Homicide*, Secs. 100, 151. As bearing on the question of justification to repel the assault by the use of the pistol, the character

and extent of the assault are important considerations, as to which the testimony is conflicting.

It is in this context that we must pass upon the court's rulings as to the admissibility of evidence concerning the knife, the waxer handle and the appellant's shirt. The testimony that Lassiter picked up a knife, and that a knife was found outside the door on a box, was admitted without objection, although Nixon admitted that Lassiter did not attempt to use it. However, the knife offered in evidence was not the same knife, but only a similar one. We find no error here. Cf. *Ross v. United States*, 103 F. 2d 600, 606 (CCA 9th). Nor do we find error in the exclusion of a hypothetical question put to Anna Walker, as to whether Lassiter could have dropped the knife which she never saw. But the rulings as to the other articles are more serious. There seems to have been no formal offer of the waxer handle and shirt although they were exhibited to the jury. One witness identified the shirt as the one worn by Nixon at the time of the shooting. A number of witnesses testified that the waxer handle produced at the trial was the one found at the scene. However, the trial court definitely ruled out a proffer of testimony by Dr. Charles Baker, a biochemist and micro-biologist employed by Penniman and Brown, chemists, to the effect that an examination of the waxer handle revealed that there was on the handle waxy material in which was embedded red fibers, identical with the fibers of the appellant's red shirt, and that there was waxy material embedded in the fabric of the shirt. In short, the proffer was to prove by scientific analysis that the handle and the shirt had come into contact, and by inference that Lassiter had struck Nixon with the handle. This would not only tend to corroborate the appellant's testimony that Lassiter struck him repeatedly on the head and shoulder with the waxer handle, but it would contradict and tend to impeach the positive testimony of Anna Walker, the only eyewitness, that Lassiter used only his fists in the assault. The State contends that "the real basis for the

action of the trial court in excluding Dr. Baker's testimony was that the chain of custody was such that there was no showing that the waxer handle was in the same condition when observed at the scene of the crime as it was when examined by Dr. Baker".

The witness Clark testified that immediately after the body was removed, he picked up the waxer handle and handed it to Captain Harper, commanding officer of the Criminal Investigation Department at Fort Meade. Captain Harper placed identifying marks on the handle. He made an unsuccessful attempt to turn it over to Sergeant May of the State Police, who did not want it. It remained in the back of Captain Harper's car for three days and then he placed it under the porch of his mother-in-law's home. On September 15, 1953, he gave it to defense counsel, who in turn, delivered it to Dr. Baker. Defense counsel had previously obtained Nixon's shirt from the State Police and turned it over to Dr. Baker on September 1. The State argues that no one testified the handle was in the same condition when turned over to Dr. Baker as when it was first picked up, and that no one could know what may have come in contact with the handle while it was in the back of the car or under the porch.

The State relies upon the cases of *State v. B. & O. R. R. Co.,* 117 Md. 280; *Blake v. State,* 157 Md. 75, and *Murphy v. State,* 184 Md. 70. In the case first cited, it was held that a shoe worn by a boy who was killed when his heel was caught in a railroad switch, was properly excluded from evidence in a civil case, because of failure to show that it was in the same condition as at the time of the accident. It could not have been reversible error in any event, for the fact that his foot was caught was undisputed. In *Blake v. State, supra,* a conviction for rape alleged to have occurred in a woods, the coat of the accused was exhibited to the jury for their inspection of particles of weeds or burrs lightly attached to it. These particles had not been discovered until the time of the trial, although the coat had been for two months in the

possession of the police. It was said: "The conclusion of the court is that while there might be, from the facts that the coat had been taken into the custody of the police on the day of the crime, and kept in that custody since, some ground of inference that the contact with the weeds or bushes had occurred on or before the day of the crime, proper caution in the introduction of such evidence·* * * requires that testimony tending to eliminate the possibility of attachment of the particles subsequent to the day of the arrest should be introduced as a preliminary. Although exactly this point was not made in the trial of this case, we think it should be met in a retrial". In *Murphy v. State, supra,* an offer of the contents of a pocketbook found at the scene of the rape was excluded for failure to show that they were the same as when the pocketbook was found. The ruling was not objected to, nor was it pressed on appeal, and testimony as to a certain card of the accused observed in the pocketbook at the time it was picked up was admitted. Thus the ruling as to the contents, which actually was in favor of the accused, could not have been prejudicial to the State. The conviction was affirmed.

It is generally recognized that preliminary testimony that the condition of the article offered remains the same is necessary or desirable. 2 *Wharton, Criminal Evidence* (11th ed.) § 757. There is an interesting discussion of the problem in the concurring opinion of Ellison, J. in *State v. Myers,* 172 S. W. 2d 946 (Mo. 1943). Wigmore indicates that there is a natural inference or presumption of continuance in the same condition which varies in each case with the nature of the subject matter and the time element. 2 *Wigmore, Evidence* (3d ed.) § 437(1). However, as pointed out in the *Blake* case, the true rule is simply one of "proper caution" to require preliminary proof, where available, of what may properly be shown by inference. In *Ford v. State,* 181 Md. 303, 312, another rape case, it was held that a coat of the accused, stained with human blood, was properly put in evidence without direct proof that it remained in

the same condition, and *Blake v. State, supra,* was distinguished. In *Shanks v. State,* 185 Md. 437, scientific evidence as to the type of blood on the accused's garments and elsewhere was held properly admitted. In *Corens v. State,* 185 Md. 561 and *Williams v. State,* 64 Md. 384, testimony as to chemical and medical findings based on material examined long after the alleged crime, was held properly admitted. In *Edwards v. State,* 194 Md. 387, a cartridge case picked up at the scene of the crime nine days after the murder was held admissible to furnish a basis for expert opinion that it was fired from the accused's pistol. In the instant case, the possibility that red fibers, identical to those of which the shirt of the accused was made as determined by chemical and microscopic examination, could have become embedded in the waxer handle subsequent to the shooting, is so remote as to be negligible.

The case of *United States v. S. B. Penick & Co.,* 136 F. 2d 413 (CCA 2d), relied on by the State, merely holds that there is no hard and fast rule that articles offered must be continuously beyond the reach of intermeddlers. The question is one of reasonable probability. See also *Pasadena Research Laboratories v. United States,* 169 F. 2d 375 (CCA 9th). In the instant case the probability that third parties may have had access to the waxer handle while in the back of the car or under the house is extremely slight, and the identification of the article was beyond question. Cf. *Freedman v. State,* 195 Md. 275.

The State argues that in any event the matter should be left entirely to the discretion of the trial court, citing 2 *Wigmore, Evidence* (3d ed.), § 437(1), *supra.* But we are unwilling to adopt that view. The testimony was so relevant and material, as bearing upon the character of the assault and contradicting the testimony of the only eyewitness, that we think its exclusion an abuse of discretion under the circumstances which amounted to reversible error. Of course, the jury might

disbelieve it, or attach little weight to it, but they should have had the opportunity to consider it, when proferred.

Other objections to rulings on the evidence have little substance and may be briefly noted. The significance of a question put to Dr. Fisher, who performed an autopsy, as to the angle of the chest wounds is not apparent, and seems to have been fully covered on direct examination. There was no abuse of discretion in admitting a photograph of the scene taken the following day for the limited purpose of showing the location. Any possible error in rejecting the record of the sale of the pistol offered by the appellant to show an error as to the date, was cured when the accused admitted purchasing the pistol on August 25. Certain questions put to character witnesses were properly excluded as not properly framed to elicit the general reputation of the accused for peace and quietude in the community where the appellant resided, or where the witnesses stated they had never heard any opinion expressed prior to the shooting. *Allison v. State*, 203 Md. 1, 98 A. 2d 273 and cases cited. A question as to the general reputation of Lassiter, apparently designed to show his quarrelsome disposition, was properly excluded because it was not confined to the neighborhood nor was any basis laid. We need not now consider whether, if the question had been properly framed and a proper basis laid, it would have come under the exception that where there is a claim of self-defense the general rule, that the reputation of a victim is not at issue, is not applicable. See 1 *Wharton, Criminal Evidence,* Sec. 339 and note 64 *A.L.R.* 1029. The court's charge to the jury, to which there was no objection, clearly put to the jury the issue of self-defense.

> *Judgment reversed and new trial awarded, costs to be paid by the Commissioners of Anne Arundel County under Chapter 492, Acts of 1953.*