FREDERICK J. GILLIS, JR. *v.* STATE OF MARYLAND

[No. 742, September Term, 1982.]

*Decided February 18, 1983.*

The cause was argued before LISS, BISHOP and ADKINS, JJ.

*J. Bernard McClellan* for appellant.

*Alexander L. Cummings, Assistant Attorney General,* with whom were *Stephen H. Sachs, Attorney General, William A. Swisher, State's Attorney for Baltimore City,* and *Olga M. Bruning, Assistant State's Attorney for Baltimore City,* on the brief, for appellee.

LISS, J., delivered the opinion of the Court.

On October 20, 1981, appellants, Frederick J. Gillis, Jr., and Robert Lewis Paige, Jr., were charged by indictment in the Criminal Court of Baltimore with conspiracy to distribute heroin, possession with intent to distribute heroin, and possession of heroin.

On February 9, 1982, all indictments against Paige were *nol prossed*. Appellant was tried before a jury in the Criminal Court of Baltimore on February 22, 1982, and was convicted of possession of heroin with intent to distribute. A fifteen year sentence was imposed and it is from that judgment that the instant appeal was filed.[1] Appellant raises four issues to be decided by this appeal:

1. Did the lower court err in refusing to require the production of the grand jury testimony of State's witness, Officer Joseph Goldberg (the arresting officer)?

2. Did the lower court err in calling Robert Lewis Paige, Jr., as a court's witness?

A. Did the lower court abuse its discretion in calling Paige as a court's witness?

B. Did the lower court err in the procedure by which it called Paige as a court's witness?

3. Did the lower court err in not complying with the provisions of Maryland Code (1974, 1980 Repl. Vol.) § 10-1003 of the Courts and Judicial Proceedings Article?

4. Did the lower court err in denying appellant's motion for a judgment of acquittal on the count charging appellant with possession of heroin in sufficient quantity to reasonably indicate under all the circumstances an intent to distribute?

The record discloses that on September 9, 1981, at approximately 6:10 p.m., Officer Joseph Goldberg, of the Baltimore City Police Department, while in uniform and driving a marked police vehicle, approached the area of the intersection of Brunt and Gold Streets in Baltimore City.

---

1. At the sentence hearing held on March 30, 1982, the indictment charging appellant with conspiracy to distribute heroin was *nol prossed*.

Officer Goldberg observed a large group of approximately 30 to 40 people gathered on the corner of the intersection. Officer Goldberg noted that many of these people were known drug abusers. At that time, he further observed the appellant and another person come out of an alley located near the 2200 block of Brunt Street.

After circling the block a number of times, Officer Goldberg stopped his police vehicle near the alley, off the 2200 block of Brunt Street, and observed the appellant standing in front of a telephone pole. The appellant then turned away from the telephone pole and was facing the wall in the alley, with his back to the officer. Officer Goldberg approached the appellant, patted him down, and then walked to the telephone pole where the appellant had been standing. The officer seized from the telephone pole a plain brown bag which had been tucked into a wire which was wrapped around the telephone pole. Officer Goldberg opened the paper bag and observed six capsules containing a white powder. At this time, according to the testimony of Officer Goldberg at the trial, the appellant stated, "Man, those aren't mine, those aren't mine." Officer Goldberg then placed the appellant under arrest and he was transported to the Western District Police Station.

Approximately three hours later, while inside the Western District Police Station, Officer Goldberg was approached by an unknown black female, who directed Officer Goldberg's attention to a young, black male, who was later identified as Robert Lewis Paige, Jr. Paige proceeded to admit to ownership of the controlled dangerous substance which the officer had located in the alley, near the 2200 block of Brunt Street, and exculpated the appellant. Paige was then placed under arrest and charged with possession with intent to distribute heroin and possession of heroin.

During the course of his direct testimony Officer Goldberg told the jury about the circumstances surrounding his seizure of the contraband attached to the pole. The officer stated that at the time of the seizure the appellant said, "Those aren't mine, those aren't mine," the implication

being that the appellant knew at that time that the packet contained illegal drugs. Officer Goldberg also testified to the circumstances under which Paige had claimed ownership of the drugs and had attempted to exculpate the appellant, who was known to Paige as "Dimples." Officer Goldberg stated that he did not believe Paige because he appeared to be under the influence of narcotics at the time he claimed ownership of the drugs and was unable to describe accurately the contents of the packet in which the drugs were found.

On cross-examination, Officer Goldberg conceded that appellant's alleged incriminating statement as to the contraband seized was not included in either the narrative of the charging document or the five page police report which he prepared. He also admitted that his reservations as to the truthfulness of Paige and his condition with respect to being under the influence of narcotics were not recorded in either document. The officer was then asked whether his testimony before the grand jury with respect to these two points was consistent with his trial court testimony. When the officer stated that he did not remember, defense counsel requested the trial judge to require the State to produce the grand jury testimony of the officer. The trial judge ruled that if the transcript was already typed, defense counsel was to be advised of Officer Goldberg's testimony, if any, concerning these two points. If the testimony was not typed, the trial judge stated that she would not require it to be typed.

1.

We conclude that the trial court committed reversible error in its ruling concerning the applicability and effect of §§ 10-1001 through 10-1003 of the Courts & Judicial Proceedings Article of the Maryland Code (1974, 1980 Repl. Vol.). It is therefore not necessary for us to consider the other contentions of error alleged by appellant in his brief. If, upon retrial, the issue of appellant's right to the use of the grand jury testimony for impeachment purposes is raised again, we

call to the attention of the trial court the cases of *Carr v. State,* 284 Md. 455, 397 A.2d 606 (1979) and *Leonard v. State,* 46 Md. App. 631, 421 A.2d 85 (1980), *aff'd* 290 Md. 295, 429 A.2d 538 (1981).

Maryland Code (1974, 1980 Repl. Vol.) Subtitle 10 of the Courts & Judicial Proceedings Article, entitled "Controlled Dangerous Substances", provides in pertinent part as follows:

Section 10-1001

For the purpose of establishing that physical evidence in a criminal or civil proceeding constitutes a particular controlled dangerous substance defined under Article 27 of this Code, a report signed by the chemist or analyst who performed the test or tests as to its nature is prima facie evidence that the material delivered to him was properly tested under procedures approved by the Department of Health and Mental Hygiene, that those procedures are legally reliable, that the material was delivered to him by the officer or person stated in the report, and that the material was or contained the substance therein stated, without the necessity of the chemist or analyst personally appearing in court, provided the report identifies the chemist or analyst as an individual certified by the Department of Health and Mental Hygiene, the Maryland State Police Department, the Baltimore City Police Department, or any county police department employing analysts of controlled dangerous substances, as qualified under standards approved by the Department of Health and Mental Hygiene to analyze those substances, states that he made an analysis of the material under procedures approved by that department, and also states that the substance, in his opinion, is or contains the particular controlled dangerous substance specified.

Section 10-1002

For the purpose of establishing, in a criminal or civil proceeding, the chain of physical custody or control of evidence consisting of or containing a substance tested or analyzed to determine whether it is a controlled dangerous substance defined under Article 27 of this Code, a statement signed by each successive officer or other person having the custody of the evidence that he delivered it to the person indicated on or about the date stated is prima facie evidence that the person had custody and made the delivery as stated, without the necessity of a personal appearance in court by the person signing the statement. The statement shall contain a sufficient description of the material or its container so as to distinguish it as the particular item in question and shall state that the material was delivered in essentially the same condition as received. The statement may be placed on the same document as the report provided for in § 10-1001.

Section 10-1003

In a criminal proceeding, the prosecution shall, upon written demand of a defendant filed in the proceedings at least five days prior to a trial in the proceeding, require the presence of the chemist, analyst, or any person in the chain of custody as a prosecution witness. The provisions of §§ 10-1001 and 10-1002 concerning prima facie evidence do not apply to the testimony of that witness. The provisions of §§ 10-1001 and 10-1002 are applicable in a criminal proceeding only when a copy of the report or statement to be introduced is mailed, delivered, or made available to counsel for the defendant or to the defendant personally when he is not represented by counsel, at least ten days prior to the introduction of the report or statement at trial.

Appellant, pursuant to Section 10-1003 of the Courts Article, filed a written demand for the presence of all persons in the chain of custody of the alleged controlled dangerous substance. As shown by the chain of custody form which was filed as State's Exhibit #5, the State failed to produce all the persons listed on the form. The only witnesses called were Officer Goldberg and the chemist, Fuad Jarjoura. The State did not produce any evidence as to the remaining witnesses' participation in the handling of the alleged contraband. Included on the chain of custody form was a written statement that at least four and perhaps five persons had had custody of the evidence, including Detective Goldberg, who seized it and transported it to the police station. Rosalind Bowman, according to the testimony of the fourth custodian, the chemist, next received custody of the evidence. This evidence came in without objection. The chemist testified as to his and Mrs. Bowman's handling of the evidence. The chain of custody form listed two other names, Joseph Forster and Jayson Firoelli, who were not produced as State's witnesses. Additionally, there appear the initials of another individual, who had some contact with the drugs but who was never identified, and his participation in the custody and control of the evidence was never explained. The record further shows that the State never furnished the defense with the statements required by Section 10-1002 of the Courts Article.

In that state of the proceedings, defense counsel entered a timely objection to the introduction of the evidence of the controlled dangerous substance on the specific ground that the State had failed to produce all the witnesses in the chain of custody as prosecution witnesses. The trial court ruled that the State would not be required to produce the other witnesses because the testimony of the officer and chemist had shown "there was no likelihood of any taint."

We do not agree. The Legislature in adopting the sections of the law here under consideration created a prima facie presumption in favor of the report of a chemist analyzing an alleged controlled dangerous substance. *See* Section

10-1001. It also provided that for the purpose of establishing custody a statement signed by those persons having custody of the evidence must be delivered to the next person on the list. This is prima facie evidence that the person had custody and made delivery as stated and acts so as to preclude the necessity of the appearance of that person in court. *See* Section 10-1002. The section also particularizes the information which must appear on the statement. The provisions of Sections 10-1001 and 10-1002 and the prima facie presumption excusing the attendance of the witnesses designated apply only in those instances where a copy of the report and/or the statements to be introduced are mailed, delivered, or made available to defense counsel or the defendant at least ten days prior to trial. *This the State did not do.* The defense availed itself of the right granted it by Section 10-1003 by notifying the prosecution in writing within the time specified that it would require the presence of the chemist and any person in the chain of custody *as a prosecution witness.* The State elected not to comply with the clear mandate of the statute. Under these circumstances, the trial judge should have required the witnesses to be produced. In the absence of such requirement, the admission of the drugs as an exhibit was error.

> *Judgment reversed, remanded for new trial.*
> *Costs to be paid by Mayor and City Council of Baltimore.*