566 A.2d 126

Arthur THOMPSON

v.

STATE of Maryland.

No. 174 Sept. Term, 1989.

Court of Special Appeals of Maryland.

Nov. 30, 1989.

Michael R. Malloy, Asst. Public Defender (Alan H. Murrell, Public Defender on the brief), Baltimore, for appellant.

Beverly Peyton Griffith, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., on the brief), Baltimore, for appellee.

Submitted before BISHOP and KARWACKI, JJ.,
and JAMES S. GETTY (Retired, Specially Assigned).

JAMES S. GETTY, Judge, Specially Assigned.

The novel question posed by this case is whether the State is precluded from introducing evidence allegedly seized from a defendant where a demand has been made that the State establish the chain of custody of the property seized and the State cannot produce the officer who seized the property, because he is deceased.

In a thorough and well-reasoned opinion, Judge Prevas, presiding in the Circuit Court for Baltimore City, held that the vials of cocaine allegedly seized from Arthur Thompson, appellant, were admissible. Appellant, at the urging of his counsel and the court, has appealed from the guilty verdict that followed the evidentiary phase of his trial.

Appellant was charged with possession of cocaine and related offenses. A hearing was held on appellant's motion to suppress the evidence of possession of cocaine due to the failure of the State to establish the chain of custody of the controlled dangerous substance. The court overruled the motion and on January 31, 1989, appellant opted for a court trial upon an agreed statement of facts.

Counsel for the State and for appellant agreed to proceed on count two of the charges which alleges possession of cocaine. The agreed facts, in pertinent part, are:

> Sergeant Fred Bealefeld of the Baltimore City Police Department and Agent Willis Sheppard placed appellant under arrest on March 6, 1988, at approximately 9:00 p.m. In Bealefeld's presence, Sheppard searched appellant and recovered ten clear vials containing a white powder; four clear empty vials; two vials with a residue of powder; a zip-lock plastic bag with twenty smaller plastic bags inside; a syringe and needle; and sixteen one dollar bills. Police Officer Charles Mitchell would testify that on March 6, he was assigned to the Evidence Control Unit of the Department. His duties included witnessing the sub-

mission of suspected controlled dangerous substances brought to the evidence control unit. A property receipt form is filled out in his presence by the officer submitting contraband and he inspects the items to verify that what is submitted is accurately reflected on the form completed by the submitting officer.

Shortly after 9:00 p.m. on March 6th, Sheppard arrived at the control unit and filled out the receipt form evidencing that he was submitting to the evidence control unit ten clear vials of white powder, four clear vials, two clear vials containing residue, a plastic bag containing smaller bags and one hypodermic syringe. Mitchell inspected the items, matched the items against the form and signed the form.

The statement of facts further recited that the vials of white powder were delivered at a later time to the police laboratory and analyzed by a qualified chemist who determined that the white powder was cocaine. Agent Sheppard, the State reported, died from an accidental fall during a camping trip in West Virginia approximately one month after appellant's arrest.

At the suppression hearing, Sgt. Bealefeld explained the procedure followed by Baltimore City Police Officers where controlled dangerous substances are seized. The suspect property is immediately transported to the evidence control section at police headquarters. Upon arrival the transporting officer executes a chain of custody evidence submission form and a property slip detailing the items submitted for analysis and the other evidence, if any, that is to be secured. Upon completion of the paperwork, a technician photographs the evidence in the presence of the transporting officer, places the items in a sealed container, and then deposits the container in a depository safe pending chemical analysis.

The items being submitted are listed on the chain of custody form and the chemist who analyzes the material records the date he received the material, the results of the analysis, and the date the material is returned to the

property control section.   Sgt. Bealefeld reviewed the chain of custody evidence report and concluded that the established procedure was followed in this case.   He testified that the items in the photograph attached to the chain of custody form appear to be in the same condition as he observed them on the night of the arrest.[1]

## The Law

We are concerned here with the application of Courts and Judicial Proceedings Article 10–1001, 10–1002 and 10–1003 of the Maryland Code to the facts presented.[2]   Sec. 10–1001

---

1.   In the agreed statement of facts the State recites that Officer Mitchell would testify that Agent Sheppard arrived at the evidence control unit "shortly after 9:00 p.m. on the 6th of March."   The chain of evidence report indicates that Sheppard entered "2100 hrs" on the top line of the report and beneath his certification that the property seized was in the same condition as when received, he signed his name and entered the time as "2210 hours."   We assume that is the time when the report was completed.   Mitchell, however, was not the receiving officer.   Larry E. Triplett is the person who signed the receipt of evidence form.   He signed the chain of evidence form and dated it 3/7/88 at 0630.

2.   § 10–1001.   Chemical test report.
    For the purpose of establishing that physical evidence in a criminal or civil proceeding constitutes a particular controlled dangerous substance defined under Article 27 of this Code, a report signed by the chemist or analyst who performed the test or tests as to its nature is prima facie evidence that the material delivered to him was properly tested under procedures approved by the Department of Health and Mental Hygiene, that those procedures are legally reliable, that the material was delivered to him by the officer or person stated in the report, and that the material was or contained the substance therein stated, without the necessity of the chemist or analyst personally appearing in court, provided the report identifies the chemist or analyst as an individual certified by the Department of Health and Mental Hygiene, the Maryland State Police Department, the Baltimore City Police Department, or any county police department employing analysts of controlled dangerous substances, as qualified under standards approved by the Department of Health and Mental Hygiene to analyze those substances, states that he made an analysis of the material under procedures approved by that department, and also states that the substance, in his opinion, is or contains the particular controlled dangerous substance specified.   Nothing in this section precludes the right of any party to introduce any evidence supporting or contradicting the evidence contained in or the presumptions raised by the report.

provides that a chemist's report is *prima facie* evidence that the evidence submitted to him was properly tested

---

**§ 10–1002. Chain of physical custody or control.**

(a) In this part:

(1) "Chain of custody" means:

(i) The seizing officer;

(ii) The packaging officer, if the packaging officer is not also the seizing officer; and

(iii) The chemist or other person who actually touched the substance and not merely the outer sealed package in which the substance was placed by the law enforcement agency before or during the analysis of the substance; and

(2) "Chain of custody" does not include a person who handled the substance in any form after analysis of the substance.

(b)(1) For the purpose of establishing, in a criminal or civil proceeding, the chain of physical custody or control of evidence consisting of or containing a substance tested or analyzed to determine whether it is a controlled dangerous substance defined under Article 27 of this Code, a statement signed by each successive person in the chain of custody that the person delivered it to the other person indicated on or about the date stated is prima facie evidence that the person had custody and made the delivery as stated, without the necessity of a personal appearance in court by the person signing the statement.

(2) The statement shall contain a sufficient description of the material or its container so as to distinguish it as the particular item in question and shall state that the material was delivered in essentially the same condition as received.

(3) The statement may be placed on the same document as the report provided for in § 10–1001 of this part.

(4) Nothing in this section precludes the right of any party to introduce any evidence supporting or contradicting the evidence contained in or the presumption raised by the statement.

**§ 10–1003. Presence of chemist or analyst at criminal proceeding; availability of chemical report to defense counsel.**

(a) *In general.*—(1) In a criminal proceeding, the prosecution shall, upon written demand of a defendant filed in the proceedings at least 5 days prior to a trial in the proceedings, require the presence of the chemist, analyst, or any person in the chain of custody as a prosecution witness.

(2) The provisions of §§ 10–1001 and 10–1002 of this part concerning prima facie evidence do not apply to the testimony of that witness.

(3) The provisions of §§ 10–1001 and 10–1002 of this part are applicable in a criminal proceeding only when a copy of the report or statement to be introduced is mailed, delivered, or made available to counsel for the defendant or to the defendant personally when the defendant is not represented by counsel, at least 10 days prior to the introduction of the report or statement at trial.

(b) *Witness for defense.*—Nothing contained in this part shall prevent the defendant from summoning a witness mentioned in this part as a witness for the defense.

Md.Cts. & Jud.Proc.Code Ann. (1984 Repl.Vol. and 1989 Cum.Supp.).

without the necessity of the chemist appearing in court. Sec. 10–1002, as amended, effective July 1, 1988, sets forth the persons included in the chain of custody, namely, the seizing officer, the packaging officer, and the chemist who analyzed the substance submitted. In this case, the 1988 amendment is not significant, because the seizing officer was a necessary party in establishing the chain of custody prior to the amendment. The amendment streamlined the procedure by eliminating those peripherally involved in the chain of custody.

Sec. 10–1003, however, requires the State, upon written demand by the defendant, to produce the chemist, analyst, or any person in the chain of custody as a prosecution witness. Where the defendant demands that the chain of custody be established, the provisions of § 10–1001 and § 10–1002 concerning *prima facie* evidence do not apply.

In *Gillis v. State*, 53 Md.App. 691, 456 A.2d 89 (1983), *cert. denied*, 296 Md. 172 (1983), cited by appellant, the defense availed itself of the right granted by § 10–1003 requiring the presence of the chemist and any person involved in the chain of custody. The State produced the seizing officer and the chemist, but did not produce three or four other persons who at some point had physical custody of the evidence. The trial court ruled that the other witnesses need not be produced because the testimony of the seizing officer and the chemist had shown "there was no likelihood of any taint." We reversed, stating that the State opted not to comply with the clear mandate of the statute.

Thereafter, in *Parker v. State*, 72 Md.App. 543, 531 A.2d 1035 (1987), *cert. dismissed*, 312 Md. 657, 541 A.2d 993 (1988), the State again challenged the *Gillis* application of § 10–1003. In *Parker* the State had three persons involved in the chain of custody: the arresting officer, a laboratory technician and the chemist. At trial, only the officer and the chemist were called despite appellant's timely request that all persons involved in the chain of custody be produced.

The trial court admitted into evidence, over objection, the chain of custody form, the chemist's report and a photograph of the capsule seized from the accused. We reversed, stating (Bell, R.M., J.):

> The provisions of sec. 10-1003 are clear, unambiguous, and mandatory. If they are to be construed as the State suggests (no reasonable inference of tampering) they are at best superfluous. Moreover, *Gillis* belies that position and we reaffirm *Gillis*.

The distinguishing factor in the present case is that the State has produced all of the persons in the chain of custody and accounted for the inability of one of those witnesses, Sheppard, to testify. In both *Gillis* and *Parker* the witnesses were readily available; here that is impossible.

In an effort to establish the legislative intent in enacting the chain of custody legislation, the State submitted for the trial court's consideration the floor report on H.B. 1093,[3] which became the 1988 amendment to § 10-1002 limiting the number of persons necessary to establish the chain of custody. Under "Background," the Floor Report observed that:

> Testimony indicated that police personnel who only deliver or have temporary custody of a sealed package are not in a position to alter the substance and are not necessary witnesses. An example was given of a police officer quitting or retiring and not being available for testimony. The officer had delivered over 100 packages of controlled dangerous substances and some cases had to be dropped due to the unavailability of the officer.

It seems clear that the legislative intent in adopting § 10-1001 was to accelerate the trial of cases where there is no allegation that the evidence has been either purposefully adulterated or mistakenly substituted, by dispensing with

---

3. The Floor Report was the only data available from the Department of Legislative Reference.

the requirement that the chemist appear in court. His report is deemed acceptable and reliable.

Sec. 10–1002 has the same purpose in expediting the trial of cases by eliminating from the chain of custody those persons peripherally or routinely involved in the handling or transportation of the evidence. Such individuals are required to attest that the described property was delivered in the same condition as received, but they need not appear as witnesses in court. The chain, therefore, has three links: the seizing officer, the packaging officer, and the chemist.

Sec. 10–1003 contains no predicate for triggering compliance with its mandate. A particular defendant may invoke his legislative command because of a firm belief that he can successfully refute or cast doubt upon the allegations made, or he can demand that the witnesses appear for no other reason than to drag out the trial and inconvenience everyone involved. The latter scenario, we agree, was not intended by the Legislature's effort to protect a defendant's right of confrontation in drug cases, but abuse of the process unquestionably remains.

Whether the dictates of § 10–1003 may spawn frivolous demands is not, however, the focus of this appeal. Obviously, the Legislature had a beneficial purpose in enacting the legislation. That purpose was to assure the reliability of evidence offered in a criminal case. It was not, as appellant asserts, a technical rule etched in stone requiring either the production of three live witnesses or forfeiture of the evidence upon which the prosecution is founded.

We interpret the rule to mean that where the witnesses capable of submitting to direct and cross-examination can be produced the State has the duty to present them in court. Pellucidly, the State cannot produce an adjudicated lunatic, a comatose patient or, as here, one who is deceased. Sec. 10–1003 was not intended to be an exclusionary rule. It must be read in conjunction with §§ 10–1001 and 10–1002, and the plain meaning of all three sections is to simplify the production of evidence subject to three qualifications set

forth in § 10–1003. Were we to accept appellant's interpretation, the message to drug dealers is clear—kill the seizing officer, or the packaging officer, or the chemist, and you are home free. In today's drug world, the strained meaning suggested by appellant represents a monumental leap backward.

Judge Moylan succinctly stated the purpose of Chapter 794 of the Acts of 1974 in *Best v. State,* 79 Md.App. 241, 556 A.2d 701 (1989). He said:

> That the purpose of . . . the Acts . . . was to facilitate the admission of evidence and not require the exclusion of evidence was made clear by the preamble to the Act, which provided that it was being enacted "[f]or the purpose of providing for *the admission of* written reports of analyses of, and statements of the chain of custody of, suspected controlled dangerous substances as *prima facie* evidence and for exceptions thereto." [Emphasis supplied.]

In deciding whether the requirements of § 10–1003 were met in *Best,* Judge Moylan added, at 79 Md.App. 241, 556 A.2d 701:

> Our ultimate holding as to the admissibility of the evidence does not depend upon such technical compliance [with 10–1003]. . . . A rule, any rule, does not exist for its own sake alone but only to serve an undergirding purpose. When in our judgment that undergirding purpose has *clearly* been served, we are not about to worry over whether there has been blind and literal obedience to the rule in the tradition of a Prussian drillmaster. The purpose of the rule is to guarantee the integrity of the physical evidence.

We believe that under the circumstances of this case, the State was in the same place it was before the rules were promulgated. The State was required to produce the chemist and the packaging officer; it did so. The State also produced evidence of the time of the arrest, the time that Sheppard submitted the evidence at police headquarters, the

property sheet, and the chain of custody form prepared by Sheppard. It produced everything that Sheppard did and verified what was submitted through Bealefeld who participated in the arrest. All of this data was subject to cross-examination of the packaging officer, the chemist or Bealefeld, and other witnesses, if any, that appellant wished to call in his defense. The only thing lacking was the opportunity to ask Sheppard if he substituted cocaine for some allegedly innocuous substance appellant had in the vials. The absurdity of getting an affirmative answer to that question is self-evident.

Finally, "[r]esults that are unreasonable, illegal, or inconsistent with common sense should be avoided whenever possible with the real legislative intention prevailing over the intention dictated by the literal meaning." *Kaczorowski v. City of Baltimore*, 309 Md. 505, 525 A.2d 628 (1987), quoting *State v. Fabritz*, 276 Md. 416, 348 A.2d 275 (1975), *cert. denied*, 425 U.S. 942, 96 S.Ct. 1680, 48 L.Ed.2d 185 (1976). The State in this case was no better off than it was before the 1974 statute eased its burden of production; the enactment of § 10–1003 cannot logically be construed to place it in a more difficult position.

The trial judge found that the chain of custody had been established. We affirm.

JUDGMENT AFFIRMED.

COSTS TO BE PAID BY APPELLANT.