REPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 1423

September Term, 2016

_____

ROBERT WHEELER

v.

STATE OF MARYLAND

_____

Kehoe,
Leahy,
Alpert, Paul E.
    (Senior Judge, Specially Assigned),

JJ.
_____

Opinion by Alpert, J.
_____

Filed:  July 3, 2017

Robert Wheeler, appellant, was convicted by a jury sitting in the Circuit Court for Baltimore City of conspiracy to distribute heroin and distributing heroin.[1]  Appellant asks a novel question on appeal:  Did the trial court err in the admission of drug evidence because the State failed to establish a proper chain of custody when it failed to produce the packaging/submitting officer at trial?  For the reasons that follow, we shall affirm.

**FACTS**

The facts of this case are relatively straightforward.  Around noon on September 21, 2015, an undercover narcotics team with the Baltimore City Police Department operated a buy/walk operation in the 5100 block of Park Heights Avenue, a mix of residential and commercial properties.  Detective Ivan Bell testified that, as the undercover officer, he walked into the block and was approached by appellant, who was riding a bicycle and advertising "space jam," which was described as the name of heroin sold in the area.  When Detective Bell indicated his desire to purchase some heroin, appellant took him behind the store fronts where he introduced him to two individuals from whom the detective purchased a total of three baggies of heroin.  From the first individual the detective purchased heroin packaged in two small orange Ziploc baggies; from the second individual the detective purchased heroin packaged in a clear Ziploc baggie with blue writing on it.  The detective then left the area.

---

[1] The jury acquitted appellant of possession of heroin with the intent to distribute and possession of heroin.  Appellant was sentenced by the court to two concurrent ten-year terms of imprisonment, all but five years of each suspended, followed by five years of supervised probation.

Less than an hour after the sale, Detective Bell returned to the police station where he identified appellant through a photograph database as the person who introduced him to the sellers, and he wrote up his report, writing the "centralized complaint" number 6150909547 on all relevant documents. A State chemist, who was qualified as an expert in the chemical analysis and identification of heroin, testified that she received a package with the same complaint number from the evidence control unit (ECU). She analyzed the substances found in the three baggies inside the package and determined that the substance was heroin. Over objection, the drugs and chemist report were admitted into evidence. We shall provide additional facts as necessary below.

**DISCUSSION**

Appellant argues on appeal that the State failed to establish a proper chain of custody of the suspected drugs because the State failed to produce the packaging/submitting officer as a witness. Without the packaging/submitting officer, appellant argues the State failed to "guarantee the integrity of the physical evidence," and therefore, the trial court erred in admitting the drug evidence and chemist report. The State responds that the trial court properly exercised its discretion in admitting the drug evidence and chemist report because the State presented sufficient evidence that there was a reasonable probability that no tampering occurred. We agree with the State.

To answer the argument raised, appellant directs our attention to §§ 10-1001, 10-1002, and 10-1003 of the Md. Code Ann., Cts. & Jud. Proc II. Those sections are part of a statutory scheme allowing the State, under certain circumstances, to use procedural shortcuts during a criminal trial to establish a chain of custody for controlled dangerous

2

substances. Specifically, § 10-1001 allows the State to introduce a chemist report without the chemist because the report is considered prima facie evidence that the evidence submitted to the chemist was properly tested. *Thompson v. State*, 80 Md. App. 676, 679-81 (1989). Section 10-1002 defines a chain of custody as limited to three persons -- the seizing officer, the packaging officer, and the chemist who analyzed the substance -- thereby eliminating from the chain of custody those only peripherally involved in the handling of the suspected narcotics. *Id*. at 681. Section 10-1003, among other things, provides that the State may not take advantage of the above two shortcuts when the defendant, at least five days before trial, files a written demand that the State produce at trial all the persons in the chain of custody. *Id*.

In *Parker v. State*, 72 Md. App. 543 (1987), *cert. dismissed*, 312 Md. 657 (1988) and *Gillis v. State*, 53 Md. App. 691, *cert. denied*, 296 Md. 111 (1983), we interpreted §10-1003 rigidly. In *Parker*, we reversed where the State produced at trial only the arresting officer and the chemist but did not produce the lab technician, and in *Gillis* we reversed where the State produced at trial only the seizing officer and chemist but did not produce the other three or four persons who had physical custody of the evidence.

In *Thompson*, however, we rejected the rigidity with which we had previously interpreted §10-1003, recognizing that there are situations where it is not possible or practical for the State to produce a witness required under §10-1003. In *Thompson*, Thompson had been charged with possession of cocaine and related offenses. At trial, the State produced the packaging/submitting officer and chemist but did not produce the seizing officer, who had died before trial. Thompson appealed, and we held that reversal

3

was unwarranted. In reaching that conclusion, we thoroughly reviewed the legislative history and purpose of the above three sections, stating:

> It seems clear that the legislative intent in adopting § 10-1001 was to accelerate the trial of cases where there is no allegation that the evidence has been either purposefully adulterated or mistakenly substituted, by dispensing with the requirement that the chemist appear in court. His report is deemed acceptable and reliable.

> Sec. 10-1002 has the same purpose in expediting the trial of cases by eliminating from the chain of custody those persons peripherally or routinely involved in the handling or transportation of the evidence. Such individuals are required to attest that the described property was delivered in the same condition as received, but they need not appear as witnesses in court. The chain, therefore, has three links: the seizing officer, the packaging officer, and the chemist.

> Sec. 10-1003 contains no predicate for triggering compliance with its mandate. A particular defendant may invoke his legislative command because of a firm belief that he can successfully refute or cast doubt upon the allegations made, or he can demand that the witnesses appear for no other reason than to drag out the trial and inconvenience everyone involved. The latter scenario, we agree, was not intended by the Legislature's effort to protect a defendant's right of confrontation in drug cases, but abuse of the process unquestionably remains.

> *Whether the dictates of § 10-1003 may spawn frivolous demands is not, however, the focus of this appeal. Obviously, the Legislature had a beneficial purpose in enacting the legislation. That purpose was to assure the reliability of evidence offered in a criminal case. It was not, as appellant asserts, a technical rule etched in stone requiring either the production of three live witnesses or forfeiture of the evidence upon which the prosecution is founded.*

> We interpret the rule to mean that where the witnesses capable of submitting to direct and cross-examination can be produced the State has the duty to present them in court. Pellucidly, the State cannot produce an adjudicated lunatic, a comatose patient or, as here, one who is deceased. *Sec. 10-1003 was not intended to be an exclusionary rule. It must be read in conjunction with §§ 10-1001 and 10-1002, and the plain meaning of all three sections is to simplify the production of evidence subject to three qualifications set forth in § 10-1003.* Were we to accept appellant's

4

interpretation, the message to drug dealers is clear-kill the seizing officer, or the packaging officer, or the chemist, and you are home free. In today's drug world, the strained meaning suggested by appellant represents a monumental leap backward.

*Thompson*, 80 Md. App. at 682-84 (emphasis added). We also quoted a portion of Judge Moylan's opinion in *Best v. State*, 79 Md. App. 241, *cert. denied*, 317 Md. 70 (1989), in which, a few months earlier, he had written about the purpose of the three sections:

[O]ur ultimate holding as to the admissibility of the evidence does not depend upon such technical compliance [with 10-1003]. . . . A rule - any rule - does not exist for its own sake alone but only to serve an undergirding purpose. When in our judgment that undergirding purpose has *clearly* been served, we are not about to worry over whether there has been blind and literal obedience to the rule in the tradition of a Prussian drillmaster. The purpose of the rule under consideration is to guarantee the integrity of the physical evidence.

\* \* \*

That the purpose of [enacting §§ 10-1001, 10-1002, 10-1003] was to facilitate the admission of evidence and not to require the exclusion of evidence was made clear by the preamble to the Act, which provided that it was being enacted "[f]or the purpose of providing for *the admission of* written reports of analyses of, and statements of the chain of custody of, suspected controlled dangerous substances as *prima facie* evidence and for exceptions thereto."

*Best*, 79 Md. App. at 249, 252 (brackets added)(emphasis in *Best*) .

We then held in *Thompson* that "[t]he State in this case was no better off than it was before the [enactment of §10-1003] eased its burden of production; the enactment of §10-1003 cannot logically be construed to place it in a more difficult position." *Thompson*, 80 Md. App. at 685. Concluding that the State was required to establish sufficient evidence of a chain of custody to demonstrate the integrity of the physical evidence, after reviewing the evidence presented at trial, we held the State did. *Id*. at 684-85. *See also Best,* 79 Md.

5

App. at 253–54 (when the State fails to provide the required documents to establish the chain of custody, the State must follow the long-established rules and procedures regulating the admission of evidence).

Here, defense counsel made a timely written request under §10-1003 and demanded the presence of the three persons in the chain of custody – the seizing officer, the packaging/submitting officer, and the chemist. The State failed to produce the packaging/submitting officer, who was apparently on vacation. This constituted a violation of §10-1003. Under the holding of *Thompson*, however, the State's failure to comply with the technical requirements of §10-1003 does not provide a basis for excluding the drug evidence and chemist report as a matter of law. We must therefore look to the rules and procedures regulating the admission of evidence to determine whether the State provided sufficient evidence of a chain of custody.

Generally, authentication or identification is a condition precedent to the admissibility of physical evidence. Md. Rule 5–901(a). This requirement is "satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." *Id.* Methods of authentication or identification include, among other things, direct testimony from a witness with firsthand knowledge of an item or circumstantial evidence regarding the appearance or characteristics of an item. Md. Rule 5-901(b)(1), (4). "The proof negating the probability of changed conditions between the crime and the trial, is spoken of as proving the chain of custody[.]" *Amos v. State*, 42 Md. App. 365, 370 (1979).

6

In *Easter v. State*, 223 Md. App. 65, 75, *cert. denied*, 445 Md. 488 (2015), we recently reiterated the law regarding the chain of custody and the admission of real evidence:

> Chain of custody evidence is necessary to demonstrate the "ultimate integrity of the physical evidence." . . . In most cases, an adequate chain of custody is established through the testimony of key witnesses who were responsible for the safekeeping of the evidence, i.e., those who can "negate a possibility of tampering" . . . and thus preclude a likelihood that the thing's condition was changed. . . . What is necessary to negate the likelihood of tampering or of change of condition will vary from case to case. The existence of gaps or weaknesses in the chain of custody generally go to the weight of the evidence and do not require exclusion of the evidence as a matter of law. *See Jones*, 172 Md. App. at 463 . . . (upholding the admission of the evidence, but noting that the gaps in the State's chain of custody supported defense counsel's remarks in closing that the jury should discount its value).

(Some internal citations and quotation marks omitted). In sum, "[w]hen determining whether a proper chain of custody has been established courts examine whether there is a 'reasonable probability that no tampering occurred.'" *Cooper v. State*, 434 Md. 209, 227 (2013) (quoting *Breeding v. State*, 220 Md. 193, 199 (1959)), *cert. denied*, 134 S.Ct. 2723 (2014).

This comports with what we had said nearly thirty years earlier regarding the admission of "real evidence" and a chain of custody:

> To be admissible, however, this "real evidence" must be in substantially the same condition that it was in at the time of the crime and must be properly identified. 3 *Wharton's Criminal Evidence* § 635 (13th ed. C. Torcia). Although there is a natural inference or presumption of continuance in the same condition, that inference varies in each case with the nature of the subject matter and the time element. *Nixon v. State*, 204 Md. 475, 482 (1954); 2 Wigmore, *Evidence* § 437(1) (3d ed.).

7

Whether real evidence is in the same condition as at the time of the crime so as to permit admissibility is not entirely a discretionary matter with the court, *Nixon*, *supra* at 483; although the circumstances surrounding its safekeeping in that condition in the interim need only be proven as a reasonable probability. *Breeding v. State*, 220 Md. 193, 199 (1959). The proof negating the probability of changed conditions between the crime and the trial, is spoken of as proving the chain of custody, and in most instances is established by accounting for custody of the evidence by responsible parties who can negate a possibility of "tampering" and thus preclude a likelihood that the thing's condition has changed.

In a narcotics' case, the heart of the crime is that the seized evidence is legally proscribed, and this of necessity requires expert analysis of the thing seized. Obviously, the identifying guarantee that the hard evidence seized is unchanged between the time of seizure and the trial is not as important as establishing that the thing seized is the same analyzed and introduced at the trial as a proscribed drug.

*Amos*, 42 Md. App. at 370.

Like other evidentiary rulings, determinations of the adequacy of the chain of custody are left to the sound discretion of the trial court, and we review those rulings for abuse of discretion. *Easter*, 223 Md. App. at 74-75. "A trial court abuses its discretion only when no reasonable person would take the view adopted by the [trial] court, or when the court acts without reference to any guiding rules or principles." *Id.* at 75 (quotation marks and citations omitted). Therefore, a trial court has discretion to admit an item of evidence even where the chain of custody is not complete enough to negate all possibility of alteration or contamination.

As stated above, defense counsel made a timely written request in accordance with §10-1003 and demanded the presence of the seizing officer, packaging/submitting officer, and chemist. Shortly before trial, the State informed defense counsel that the packaging/submitting officer would not be testifying at trial. On the morning of trial,

defense counsel moved in limine to preclude the State in opening statement from referring to the seized substance as heroin because the packaging/submitting officer would not be testifying. The trial court denied the motion, subject "to reconsideration as the trial goes along."

During the trial, Detective Bell explained what he generally did with drugs he purchased in his undercover capacity. He testified that after purchasing the drugs, he would place them in his pocket and return to a "meet spot." He would then either give the drugs to the person who was submitting the drugs or be told to return to the police station where he would give the drugs to the submitting officer. As to the latter scenario, he explained that once at the police station he would ask who was submitting that day, and then meet that person at the submission table. He would then place the drugs on the submission table in front of the submitting officer and "then go back to my cubicle."

As to what specifically happened the day of the controlled buy involving appellant, Detective Bell testified that he purchased the drugs around noon, after which he went to the meet spot where he was told to go back to the station. He testified that he made no other controlled buys that day. Once at the station, he began his report and identified appellant from a photograph. It was established that Detective Trojan was the packaging/submitting officer that day. Detective Bell testified that the drugs were then labeled to go to ECU, although he admitted that he did not see the drugs labeled. Detective Bell finished his report at 3:25 p.m. The detective identified the contents in State's Exhibit 7, a clear Ziploc baggie and orange Ziploc baggies, as the baggies he had purchased during the drug sale involving appellant on September 21. He admitted on cross-examination that

9

there was nothing unique about the color of the orange baggies, however, the blue writing on the clear baggie was unique. Although the State moved for admission of State's Exhibit 7, defense counsel objected and the court reserved on its ruling.

Over objection, the State called the chemist to the stand. The chemist testified to the protocol for receiving evidence -- an officer submits the evidence to the ECU, an evidence technician then retrieves the evidence from ECU and brings it to the chemistry vault, and the chemist assigned to the case retrieves the evidence from the vault for analysis at the laboratory. She testified that the items in State's Exhibit 7 came to the laboratory at 4:59 a.m. on September 22, 2015, and that she analyzed the contents of the package at 10:41 a.m. the same day.

The chemist testified when she received State's Exhibit 7, which was labeled with complaint number 6150909547, the heat seal was intact, which she testified makes items "very secure" from tampering. She further testified that when she opened the package she verified the contents in the package to the written description of the contents provided by the submitting officer. There was no discrepancy. She testified that the package contained "two orange colored very small heat sealed Ziploc bags containing [a] tan colored rock substance" and "one clear dash blue double print . . . very small Ziploc bag containing [a] tan colored rock substance." She explained that "one clear dash blue double print" meant the baggie was clear on one side and had writing on the other side. She performed an analysis on the substances in the baggies and determined that it was heroin. She then sealed the package and returned it to the vault. The State moved into evidence the chemist report, State Exhibit 8, but defense counsel objected. The trial court reserved on its ruling.

10

At the conclusion of the evidence, the trial court admitted the drugs and chemist report, ruling:

> All right. Let me take up the chain of custody issue first. I have said a number of times during discussions with counsel that I view Courts Article 10-1001, 2 and 3 not as exclusionary rules but as rules relating to the shortcut toward the proof of chain of custody that is available through those rules.
>
> There are numerous cases, including Thompson, and a more recent unreported case that reinforced that interpretation of those statutes and suggests that the chain of custody as a foundation for admissibility of real evidence is -- remains a matter of circumstantial evidence of reliability.
>
> In this case, although it is a close case, I believe and I find that the State has introduced sufficient evidence from which a jury could conclude that the drugs seized . . . are in fact the drugs that Defendant [sic] Bell purchased from the individuals including [appellant] having a roll [sic] in that transaction.
>
> Among the significant evidence in this case is that the – the gap which the defense has identified is entirely within police custody, not something where the drugs were unaccounted for in some unknown location for a period of time.
>
> But particularly I think the linking aspects of the description of the actual items and the dates; that is . . . Detective Bell has testified clearly that what he purchased were two orange zips of tan substance and one clear zip with blue writing, of a tan substance; that within 24 hours the same description of items are tested by Chemist Sharma, and that the State has accounted for the actual custody of them by Detective Bell up to the point at which he was in headquarters, with references to the fact that a different submitting officer submits them into ECU and then the chain [of custody] properly picks up in the lab from ECU on the next day.
>
> That evidence I find sufficient to allow the jury to infer that these are the same items. On that basis, I will admit State's Exhibit 7 and State's Exhibit 8.[2]

---

[2] State's Exhibit 8 contains two documents. The first document is the drug analysis report that states, among other things, that the drugs were submitted by Justin T. Trojan.

(continued)

11

We are persuaded that the trial court did not abuse its discretion in admitting the drug evidence, for there was sufficient evidence of a reasonable probability to establish that the drugs analyzed and presented at trial were the drugs seized by Detective Bell. Given the unique particularities of the packaging of the drugs – two orange topped Ziploc baggies and one clear baggie with blue writing on it – which were placed in an intact heat sealed packaging bag, the chance of misidentification was small. Additionally, the case number Detective Bell placed on all the documents was the same case number placed on the sealed package containing the drugs. Also, Detective Bell made only the one drug purchase that day. Moreover, the timing of when Detective Bell returned to the police station, when he began and finished his report, and when the items were retrieved from the laboratory all logically correspond. Thus, the chance that the drugs seized by Detective Bell were not the drugs analyzed by the chemist is unlikely and remote.

Although the gaps in knowledge between when the drugs were given to the packaging/submitting agent and when the chemist picked up the drugs may have been filled in if the packaging/submitting officer had testified, this did not compel a ruling as a matter of law that the proper chain of custody had not been shown. Rather, it allowed defense counsel to argue in closing that the jury should not credit the drug evidence because of the gap in the chain of custody. Because the evidence presented by the State suggests that it is unlikely that tampering undermined the integrity of the drugs, we are persuaded that the

---

(continued)
The second document is the Laboratory Evidence Transfer form that states that Officer Justin T. Trojan received the evidence on September 21, 2015 at 2:39 p.m. The next person who physically handled the drugs was Angela Ellis at 4:59 a.m. on September 22, 2015.

12

State provided sufficient evidence of a reasonable probability to establish the chain of custody of the drugs. Accordingly, we find no abuse of discretion by the trial court in admitting the drug evidence.

**JUDGMENTS AFFIRMED.**

**COSTS TO BE PAID BY APPELLANT.**