*Robert Wheeler v. State of Maryland,* No. 50, September Term 2017, Opinion by Hotten, J.

**CRIMINAL LAW – EVIDENCE – ESTABLISHING CHAIN OF CUSTODY –** The Court of Appeals held that Courts and Judicial Proceedings Article §§ 10-1001, 10-1002, and 10-1003 do not require strict application. Rather, the statutes encourage the goal of maintaining the integrity of the evidence, which is satisfied when the State presents sufficient evidence to negate the possibility of tampering.

**CRIMINAL LAW – EVIDENCE – SUFFICIENCY OF THE EVIDENCE –** The Court of Appeals held that the trial court did not abuse its discretion in ruling that the evidence presented by the State established chain of custody, where the State presented testimony that negated the reasonable probability that tampering occurred.

**CRIMINAL LAW – EVIDENCE – ADMISSION OF EVIDENCE** – The Court of Appeals held that any challenges offered after the establishment of chain of custody go to the weight and credibility of the evidence, not its admissibility.

Circuit Court for Baltimore City
Case No. 116007024
Argued: February 2, 2018

IN THE COURT OF APPEALS

OF MARYLAND

No.  50

September Term, 2017

_____

ROBERT WHEELER

v.

STATE OF MARYLAND

_____

Barbera, C.J.,
Greene,
Adkins,
McDonald,
Watts,
Hotten,
Getty,


JJ.
_____

Opinion by Hotten, J.
Adkins and Watts, JJ., concur.
_____

Filed: June 25, 2018

## FACTUAL AND PROCEDURAL BACKGROUND

Robert Wheeler, ("Petitioner") seeks review of the decision of the Circuit Court for Baltimore City regarding the admission of controlled dangerous substances into evidence at trial, in the absence of strict compliance with Maryland Code Annotated, Courts and Judicial Proceedings Article §§ 10-1001, 10-1002, and 10-1003 (hereinafter "Cts. & Jud. Proc.") discussed in detail herein. Petitioner presents the following questions for our review:

> 1. Where the Defendant in a criminal case makes a timely and proper demand under [Cts. & Jud. Proc.] §§ 10-1002 and [10]-1003, for the presence of all persons in the chain of custody, is it a legal error for the trial court to admit drug evidence where the State fails to call the "packaging" officer as a witness; or, as the Court of Special Appeals held in this case, is the admission of drug evidence under such circumstances subject to review for abuse of discretion?

> 2. Did the trial court err or abuse its discretion… in allowing the admission of the drug evidence in view of the lack of proper chain of custody?

For reasons discussed *infra*, we answer both questions in the negative and affirm the judgment of the Court of Special Appeals.

### *Background*

On September 21, 2015, Baltimore City Detective Ivan Bell ("Detective Bell"), as part of an undercover drug operation, attempted to purchase narcotics in the 5100 block of Park Heights Avenue in Baltimore City, Maryland. A "touter"[1] solicited Detective Bell

---

[1] During his testimony, Detective Bell defined a "touter" as an individual tasked

(continued. . .)

advertising "space jam" for sale, a name given to the type of heroin sold in the area. Detective Bell later identified the touter as Petitioner. Petitioner proceeded to escort Detective Bell behind several stores where two other individuals sold him three baggies of a suspected controlled dangerous substance, later identified as heroin. Two of the three baggies purchased were orange, while the third was clear with conspicuous blue writing. After the purchase, Detective Bell reconvened with the arrest team, headed by Sergeant Talley, who instructed him to return to the police station with the suspected drugs. At the station, Detective Bell prepared his report and turned the suspected drugs over to the "packaging" or "submitting" officer, Detective Justin Trojan ("Detective Trojan"). During the trial, Detective Bell revealed that he had not packaged or labeled the controlled dangerous substances, nor did he oversee the transfer of the substances to the Evidence Control Unit; but relied upon Detective Trojan to submit the items.

Prior to the start of trial, Petitioner made a timely demand pursuant to Cts. & Jud. Proc. § 10-1003 for the presence of all the members in the chain of custody at trial. However, the State was unable to call the packaging officer because his affiliation with the Baltimore City Police Department had ended. During the trial, the court admitted the suspected controlled dangerous substances after the State offered the testimony from the seizing officer and its chemist to establish the chain of custody. Petitioner opposed the

(. . .continued)

with advertising the narcotics available in the area and responsible for soliciting customers. Detective Bell further stated that this individual works in conjunction with two other individuals tasked with handling the drugs and the money.

admission arguing that Cts. & Jud. Proc. § 10-1003 requires that the packaging officer be called to testify and that absent the additional testimony, the chain of custody was not established. The court disagreed and found that the testimony presented by the State properly established the chain of custody. At the conclusion of trial, the jury convicted Petitioner of conspiracy to distribute heroin and distribution of heroin, and acquitted him of the possession with intent to distribute cocaine and possession of cocaine charges. Thereafter Petitioner timely noted an appeal to the Court of Special Appeals.

The Court of Special Appeals issued its reported opinion on July 3, 2017. *Wheeler v. State*, 233 Md. App. 265, 163 A.3d 843, *cert. granted*, 456 Md. 80, 171 A.3d 611 (2017). Before the Court of Special Appeals, Petitioner asserted that the State did not provide testimony from all statutorily required individuals to establish chain of custody following his timely demand pursuant to Cts. & Jud. Proc. § 10-1003. The Court of Special Appeals determined that collectively, the statutes act as "procedural shortcuts" utilized by the State to establish chain of custody. *Id*. at 268, 163 A.3d at 844. Further, the Court noted that while Cts. & Jud. Proc. § 10-1002 reduces the number of persons required for the establishment of chain of custody to the seizing officer, the packaging officer, and the chemist who analyzed the substance, the absence of one of those parties is not necessarily a prima facie violation of the statute. *Id*. In determining whether the circuit court abused its discretion, the Court held that when the State presents evidence demonstrating that a substance is what it purports to be, and there is no evidence of tampering, the substance is admissible. *Id*. at 278, 163 A.3d at 850. In reaching this conclusion, the Court relied on

its decisions in *Thompson v. State,*[2] *Best v. State,*[3] and *Easter v. State,*[4] which rejected the rigid application of Cts. & Jud. Proc. §§ 10-1001, 10-1002, and 10-1003. The Court determined that its previous rulings in *Parker v. State*[5] and *Gillis v. State*[6] overlooked situations where it is impractical for the State to produce all required links in the chain of custody and that under these circumstances, evidence is admissible when the State presents testimony that establishes its integrity.

---

[2] *Thompson v. State*, 80 Md. App. 676, 679-85, 566 A.2d 126, 128-31 (1989) (holding that the State's failure to produce the seizing officer did not prevent the establishment of chain of custody because the State "was no better off than it was before the 1974 statute eased its burden of production").

[3] *Best v. State,* 79 Md. App. 241, 252-53, 556 A.2d 701, 706-07 (1989) (holding that "the purpose of Chapter 794 of the Acts of 1974 [the precursor to Cts. & Jud. Proc. §§ 10-1001, 10-1002, and 10-1003] was to facilitate the admission of evidence" and that "[t]here is not the remotest suggestion of any legislative intent to make the admissibility of 'real' evidence or the proof of a chain of custody more difficult than it had been before the passage of the new statute").

[4] *Easter v. State,* 223 Md. App. 65, 75, 115 A.3d 239, 244 (2015) (holding that "[i]n most cases, an adequate chain of custody is established through the testimony of key witnesses who were responsible for the safekeeping of the evidence, i.e., those who can 'negate a possibility of 'tampering' ... and thus preclude a likelihood that the thing's condition was changed'").

[5] *Parker v. State* 72 Md. App. 543, 531 A.2d 1035 (1987) (holding that the chain of custody was not satisfied because the State did not produce a lab technician who handled the suspected narcotics).

[6] *Gillis v. State,* 53 Md. App 691, 456 A.2d 89 (1983) (holding that the chain of custody was not satisfied because the State only produced the seizing officer and the chemist but failed to elicit testimony from several additional persons who handled the suspected narcotics).

4

## STANDARD OF REVIEW

"[O]rdinarily a trial court's ruling[s] on the admissibility of evidence are reviewed for abuse of discretion." *Gordon v. State*, 431 Md. 527, 533, 66 A.3d 647, 650 (2013). "[A] court's decision is an abuse of discretion when it is 'well removed from any center mark imagined by the reviewing court and beyond the fringe of what that court deems minimally acceptable.'" *Alexis v. State*, 437 Md. 457, 478, 87 A.3d 1243, 1255 (2014) (quoting *Gray v. State*, 388 Md. 366, 383, 879 A.2d 1064 (2005)). Further, "even with respect to a discretionary matter, a trial court must exercise its discretion in accordance with correct legal standards." *Schisler v. State,* 394 Md. 519, 535, 907 A.2d 175, 184 (2006); *State v. Graves*, 447 Md. 230, 240, 135 A.3d 376, 382 (2016). As such, we examine a trial court's admissibility determinations for an abuse of discretion. *Williams v. State*, 457 Md. 551, 563, 179 A.3d 1006, 1013 (2018).

## DISCUSSION

The establishment of chain of custody is a trial court determination made after considering all of the evidence presented. In rendering its determination, the court evaluates whether the State satisfied its burden of establishing that the evidence presented at trial is in substantially the same condition as it was when initially recovered. Here, the defense made a timely demand pursuant to Cts. & Jud. Proc. § 10-1003. Thereafter, the State offered evidence to support the establishment of chain of custody, which included the testimony of the seizing officer and the state chemist who analyzed the substance. Petitioner avers that the State did not establish chain of custody because the State did not

5

produce the packaging officer as required under Cts. & Jud. Proc. § 10-1003, thereby precluding the trial court from ascertaining whether the integrity of the drugs was maintained. The State responds by asserting that it demonstrated that the evidence was substantially in the same condition as when recovered, and presented sufficient evidence to demonstrate the absence of tampering, including the testimony of the seizing officer and the chemist.

To determine whether the chain of custody was properly established, we must first review the common law principles that governed the admission of evidence prior to the enactment of Cts. & Jud. Proc. §§ 10-1001, 10-1002, and 10-1003. Then, we must determine how Maryland Rule 5-901, which governs the requirement of authentication or identification as a condition precedent to the admissibility of evidence, discussed *infra*, affects the establishment of chain of custody. As we will demonstrate, the trial court did not abuse its discretion in admitting the evidence.

### *The admission of suspected drug evidence at common law*

At common law, suspected controlled dangerous substances were admissible at trial upon a showing that the evidence was what it purported to be. In this regard, the State called all the persons who handled the evidence to substantiate its validity. A trial court then determined whether the evidence was substantially in the same condition to negate the reasonable possibility of tampering. Finally, if the burden was satisfied, the court would admit the evidence. *See, e.g.*, *Nixon v. State*, 204 Md. 475, 482, 105 A.2d 243, 247 (1954) (holding that it is necessary or desirable that the evidence remains in the same condition as

6

originally found and that a challenge to the validity of a piece of evidence is a question of reasonable probability not certainty); *Cooper v. State*, 434 Md. 209, 227, 73 A.3d 1108, 1119 (2013) (holding that "[w]hen determining whether a proper chain of custody has been established courts examine whether there is a 'reasonable probability that no tampering occurred'").

Typically, the defense was free to argue that the evidence was unreliable, but such challenges did not prevent the admission of the evidence. *See Graham v. State*, 239 Md. 521, 528, 212 A.2d 287, 291 (1965). In *Graham*, we found that where the chain of custody is established, arguments that sought to undermine the evidence did not prevent its admission, but rather go to the weight given by the trier of fact. *Id. See also Lingner v. State*, 199 Md. 503, 507, 86 A.2d 888, 890 (1952) (holding that when evaluating the connection between a defendant and a particular piece of evidence "probability is the only requirement. If there is any doubt, the decision is on the weight of the evidence, not on any question of admissibility"). Thus when seeking to admit evidence at common law, the State only needed to establish beyond a degree of reasonable probability that the evidence was what it purported to be.

This manner of evidentiary admission functioned until 1974, when the Legislature enacted Laws 1974, chapter 794, now codified as Cts. & Jud. Proc. §§ 10-1001, 10-1002, and 10-1003. In creating these rules, the legislature created procedural mechanisms that shortcut the admission of evidence by removing the requirement that all persons linked in

7

the chain of custody be called to testify. Where the statutory scheme is comprehensive, trial courts need only apply the statutes to the particular facts at issue.

Cts. & Jud. Proc. § 10-1001 provides:

> *For the purpose of establishing that physical evidence in a criminal or civil proceeding constitutes a particular controlled dangerous substance* under Title 5 of the Criminal Law Article, a report signed by the chemist or analyst who performed the test or tests as to its nature is prima facie evidence that the material delivered to the chemist or analyst was properly tested under procedures approved by the Maryland Department of Health, that those procedures are legally reliable, that the material was delivered to the chemist or analyst by the officer or person stated in the report, and that the material was or contained the substance therein stated, without the necessity of the chemist or analyst personally appearing in court, provided the report identifies the chemist or analyst as an individual certified by the Maryland Department of Health, the Department of State Police, the Baltimore City Police Department, or any county police department employing analysts of controlled dangerous substances, as qualified under standards approved by the Maryland Department of Health to analyze those substances, states that the chemist or analyst made an analysis of the material under procedures approved by that department, and also states that the substance, in the opinion of the chemist or analyst, is or contains the particular controlled dangerous substance specified. Nothing in this section precludes the right of any party to introduce any evidence supporting or contradicting the evidence contained in or the presumptions raised by the report.

(Emphasis added).

Cts. & Jud. Proc. § 10-1002 provides:

(a) In this part:
   (1) "Chain of custody" means:
      (i) The seizing officer;
      (ii) The packaging officer, if the packaging officer is not also the seizing officer; and
      (iii) The chemist or other person who actually touched the substance and not merely the outer sealed package in which the substance was placed by the law enforcement agency before or during the analysis of the substance; and

8

(2) "Chain of custody" does not include a person who handled the substance in any form after analysis of the substance.

\*\*\*

(b)(1) *For the purpose of establishing, in a criminal or civil proceeding, the chain of physical custody or control of evidence consisting of or containing a substance tested* or analyzed to determine whether it is a controlled dangerous substance under Title 5 of the Criminal Law Article, a statement signed by each successive person in the chain of custody that the person delivered it to the other person indicated on or about the date stated is prima facie evidence that the person had custody and made the delivery as stated, without the necessity of a personal appearance in court by the person signing the statement.

(2) The statement shall contain a sufficient description of the material or its container so as to distinguish it as the particular item in question and shall state that the material was delivered in essentially the same condition as received.

(3) The statement may be placed on the same document as the report provided for in § 10-1001 of this part.

(4) Nothing in this section precludes the right of any party to introduce any evidence supporting or contradicting the evidence contained in or the presumption raised by the statement.

(Emphasis added).

Finally, Cts. & Jud. Proc. § 10-1003 provides:

(a)(1) In a criminal proceeding, the prosecution shall, upon written demand of a defendant filed in the proceedings at least 5 days prior to a trial in the proceeding, require the presence of the chemist, analyst, or any person in the chain of custody as a prosecution witness.

(2) The provisions of §§ 10-1001 and 10-1002 of this part concerning prima facie evidence do not apply to the testimony of that witness.

(3) The provisions of §§ 10-1001 and 10-1002 of this part are applicable in a criminal proceeding only when a copy of the report or statement to be introduced is mailed, delivered, or made available to counsel for the defendant or to the defendant personally when the defendant is not represented by counsel, at least 10 days prior to the introduction of the report or statement at trial.

9

Cts. & Jud. Proc. § 10-1001 exists, "[f]or the purpose of establishing that physical evidence in a criminal or civil proceeding constitutes a particular controlled dangerous substance[.]" The statute provides that when the testing of a substance has occurred in a scientifically reliable manner and recorded in a written report, the testimony of the chemist or analyst is not required at trial. Similarly, Cts. & Jud. Proc. § 10-1002(b)(1) is "[f]or the purpose of establishing, in a criminal or civil proceeding, the chain of physical custody or control of evidence consisting of or containing a substance tested[.]" The statute defines "chain of custody" as including only the seizing officer, the packaging officer, and the state chemist or analyst who conducted the test. By contrast, Cts. & Jud. Proc. § 10-1003 contains limiting language that constrains the application of Cts. & Jud. Proc. §§ 10-1001 and 10-1002. The statute also removes the State's ability to admit written reports as prima facie evidence. Finally, Cts. & Jud. Proc. § 10-1003 provides a limitation on its own applicability by limiting its invocation to cases where the defendant provided ten days notice to the State. Taken together, the statutory scheme surrounding the enactment of Cts. & Jud. Proc. §§ 10-1001, 10-1002, and 10-1003 sought to ease the formal requirements for admitting suspected drugs into evidence.

### The impact of Maryland Rule 5-901

As referenced *supra*, Maryland Rule 5-901 governs the requirements for authentication or identification as a condition precedent to the admissibility of evidence. The enactment of Cts. & Jud. Proc. § 10-1003 did not impose a new burden on the State

10

when establishing chain of custody because the creation of the statutes did not repeal the common law standard. As such, when Petitioner made his demand pursuant to Cts. & Jud. Proc. § 10-1003, the State was precluded from availing itself of the statutory shortcut and the burden then reverted to the common law standard. At that point, the State was required to establish chain of custody in a manner that comported with authentication and admissibility requirements. Maryland Rule 5-901, in relevant part, states the following:

> (a) **General Provision.** The requirement of authentication or identification as a condition precedent to admissibility *is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims*.
>
> Cross reference: Rule 5-104(b).
>
> (b) **Illustrations.** By way of illustration only, and not by way of limitation, the following are examples of authentication or identification conforming with the requirements of this Rule:
>
> (1) *Testimony of Witness With Knowledge*. Testimony of a witness with knowledge that the offered evidence is what it is claimed to be.
>
> ***

(Emphasis added). We interpreted this rule in *Cooper* stating:

> [t]he circumstances surrounding [an item of evidence's] safekeeping in that condition [that is substantially the same as when it was seized] in the interim need only be proven as a reasonable probability[,] and in most instances is established by responsible parties who can negate a possibility of tampering and thus preclude a likelihood that the thing's condition was changed.

*Cooper*, 434 Md. at 228, 73 A.3d at 1119, (quoting *Wagner v. State*, 160 Md. App. 531, 552, 864 A.2d 1037, 1049-50 (2005). As this language demonstrates, Maryland Rule 5-901 only requires that the State present evidence that negates tampering.

11

As the record reflects, the trial court did not abuse its exercise of discretion relative to the admission of the evidence. The State called Detective Bell, the seizing officer, to testify regarding the undercover drug purchase and his recovery of the alleged heroin. He explained the process used in setting up and executing the undercover buy. Detective Bell indicated that after an officer executes a buy, the officer retains the items recovered until they reconvene with members of their squad. Thereafter, the undercover officer either gives the suspected narcotics to a second officer for submission or personally takes the items to the packaging officer for submission. In instances where the seizing officer does not personally submit the recovered items, the officer places them on the "submission table" where the packaging officer processes them and subsequently delivers the items to the Evidence Control Unit.

Detective Bell also indicated that he conducted one controlled buy on the afternoon in question, after which he returned to the station. Once at the station, Detective Bell initiated his report and identified Petitioner from photographs available in an officer database. Detective Bell further testified that although the packaging officer labeled the items outside of his presence, the drugs shown in court appeared to be the same drugs he purchased on September 21, 2015. Detective Bell also admitted that while two of the baggies were generic, the clear baggie with blue writing was unique and was the same as the one he previously purchased.

The State also offered the testimony of the State chemist regarding the submission process. The chemist indicated that the process includes submission to the Evidence

12

Control Unit, where a technician retrieves the item and places it in the chemistry vault. The chemist further testified that on September 22, 2015, she received the suspected drugs in a secured heat-sealed package, intact, listing the complaint number that matched the one on Detective Bell's report. She then described the same baggies as Detective Bell, and the tan colored rock contained therein. Finally, the chemist stated that she analyzed the substance and determined it was heroin, a prohibited controlled dangerous substance. After considering and weighing the testimony and evidence presented, the trial court rendered the following ruling:

> Let me take up the chain of custody issue first. I have said a number of times during discussions with counsel that I view Courts Article 10-1001, 2 and 3 not as exclusionary rules but as rules relating to the shortcut toward the proof of chain of custody that is available through those rules.
>
> There are numerous cases, including Thompson, and a more recent unreported case that reinforced that interpretation of those statutes and suggests that the chain of custody as a foundation for admissibility of real evidence is - remains a matter of circumstantial evidence of reliability.
>
> In this case, although it is a close case, I believe and I find that the State has introduced sufficient evidence from which a jury Could conclude that the drugs seized, which have been offered as State's Exhibit 6 are in fact the drugs that Defendant Bell purchased from the individuals including Mr. Wheeler having a roll in that transaction.
>
> Among the significant evidence in this case is that the - the gap which the defense has identified is entirely within police custody, not something where the drugs were unaccounted for in some unknown location for a period of time.
>
> But particularly I think the linking aspects of the description of the actual items and the dates; that is, Defendant -- Detective Bell has testified clearly that what he purchased were two orange zips of tan substance and one clear zip with blue writing, of a tan substance; that within 24 hours the same description of items are tested by Chemist Sharma, and that the State has accounted for the actual custody of them by Detective Bell up to the pbint at which he was in headquarters, with references to the fact that a different

13

> submitting officer submits them into ECU and then the chain properly picks up in the lab from ECU on the next day.
>
> That evidence I find sufficient to allow the jury to infer that these are the same items. On that basis, I will admit State's Exhibit 7 and State's Exhibit 8.

It is clear that the trial court found that there was sufficient evidence that the drugs seized by Detective Bell were the same drugs analyzed and offered at trial, regardless of the absence of the packaging officer's testimony.

## CONCLUSION

In sum, we determine that the language of Cts. & Jud. Proc. §§ 10-1001, 10-1002, and 10-1003 operates as a procedural shortcut for establishing the chain of custody. As such, where there has been an invocation of the right to have all witnesses produced pursuant to Cts. & Jud. Proc. § 10-1003, the State may not proceed under the streamlined procedure and instead, must establish a proper chain of custody that negates a reasonable probability of alteration or tampering. Maryland Rule 5-901 requires only that there be sufficient authentication as a condition precedent to the admissibility of the evidence, that satisfies a finding that the evidence is what it purports to be. Here, the State produced the officer who originally recovered the drugs and the chemist who tested them. We find that the trial court did not abuse its discretion in relying on the testimony presented to support the admission of the evidence.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS IS AFFIRMED. COSTS TO BE PAID BY PETITIONER.**

14

Circuit Court for Baltimore City
Case No. 116007024

Argued: February 2, 2018

IN THE COURT OF APPEALS

OF MARYLAND

No. 50

September Term, 2017
_____

ROBERT WHEELER

v.

STATE OF MARYLAND
_____

Barbera, C.J.
Greene
Adkins
McDonald
Watts
Hotten
Getty,

JJ.
_____

Concurring Opinion by Watts, J., which
Adkins, J., joins.
_____

Filed: June 25, 2018

Respectfully, I concur with the judgment of the Majority, but write separately to set forth my reasons for affirming the judgment of the Court of Special Appeals. In short, I would expressly hold that the standard of review for a trial court's admission of evidence under Md. Code Ann., Cts. & Jud. Proc. (1974, 2013 Repl. Vol.) ("CJ") §§ 10-1002 and 10-1003 is abuse of discretion, and that there was sufficient evidence of the chain of custody to permit admission of the evidence at issue under CJ § 10-1002(b)(1).

A "chain of custody" is "[t]he movement and location of real evidence, and the history of those persons who had it in their custody, from the time it is obtained to the time it is presented in court." *Chain of Custody*, Black's Law Dictionary (10th ed. 2014). The purpose of establishing a chain of custody is to prove that real evidence is in "substantially the same" condition as it was in "when it was seized[.]" Cooper v. State, 434 Md. 209, 228, 73 A.3d 1108, 1119 (2013) (citation omitted). Under the common law, in a criminal case, to establish a chain of custody, the State must prove that the evidence was subject to "safekeeping[,]" such that there is no "reasonable probability that [] tampering occurred." Id. at 227-28, 73 A.3d at 1119 (cleaned up).

CJ §§ 10-1002 and 10-1003 provide the State with an additional method of establishing a chain of custody of suspected drugs. Under CJ § 10-1002(b)(1), generally, the State need not secure the testimony of each person in the chain of custody of suspected drugs, as long as the State provides a statement that each such person has signed, indicating the suspected drugs were delivered on or about specified dates. Under CJ § 10-1003(a)(1), however, if a defendant files a demand for any person in the chain of custody, the State "shall . . . require the presence of" that person. In short, as Judge Moylan aptly explained,

CJ § 10-1002 provides the State with a "shortcut for" establishing a chain of custody of suspected drugs, while CJ § 10-1003 sets forth an exception to that shortcut. Best v. State, 79 Md. App. 241, 251, 556 A.2d 701, 706, cert. denied, 317 Md. 70, 562 A.2d 718 (1989).

From my perspective, this case requires the Court to decide two issues that arise out of CJ §§ 10-1002 and 10-1003. First, we must ascertain the standard of review of a trial court's ruling that drug evidence is admissible pursuant to CJ § 10-1002(b)(1). Second, we must determine whether drug evidence is admissible pursuant to CJ § 10-1002(b)(1) where a defendant makes a timely demand for the presence all persons in the chain of custody of the drug evidence pursuant to CJ § 10-1003(a)(1), the State does not arrange for the packaging officer's presence at trial, and the State offers circumstantial, but not direct, evidence as to the packaging of the drug evidence.

In the Circuit Court for Baltimore City, the State, Respondent, charged Robert Wheeler, Petitioner, with heroin-related crimes. Pursuant to CJ § 10-1003(a)(1), Wheeler filed a timely demand for the presence of every person in the chain of custody of suspected heroin. The chain of custody was comprised of three people: Detective Ivan Bell, the seizing officer; Justin Trojan, the packaging officer; and Savitri Sharma, the chemist.

On the date on which trial was scheduled to begin, in the Reception Court, the prosecutor advised that Trojan had resigned from the Baltimore Police Department and moved to Chicago. Additionally, at the time, Trojan was on vacation. The prosecutor stated that he had not arranged for Trojan to testify because the prosecutor had not expected this case to proceed to trial. The prosecutor moved for a postponement so that Trojan could testify the following week. Wheeler opposed the motion to postpone, which the Reception

Court denied.

At trial, Detective Bell and Sharma testified, but Trojan did not. Detective Bell testified that, on September 21, 2015, he participated in one, and only one, drug sale. While undercover at the 5100 block of Park Heights Avenue, he encountered Wheeler, who took Detective Bell to two other individuals. Detective Bell purchased three baggies of suspected heroin for $60. Detective Bell testified that he purchased three baggies of suspected heroin: two of the baggies were orange, and one was in a clear baggie with blue writing. Detective Bell left the area, contacted Sergeant Talley, and provided him with descriptions of the three individuals. Approximately forty-five minutes to one hour later, Detective Bell returned to police headquarters with the drugs. Once the arrest team arrived, Detective Bell obtained a Central Complaint Number. The Central Complaint Number on his report was 6150909547. At 3:25 p.m., Detective Bell completed his report. Detective Bell testified, however, that he did not observe the labeling of the suspected heroin for submission to the Evidence Control Unit. Another law enforcement officer testified that Trojan was the packaging officer.

The prosecutor showed Detective Bell an exhibit that had been marked for identification as State's Exhibit Number 7. Detective Bell testified that the exhibit included "an orange zippy[,]" as well as a "clear [] Ziploc baggie" with "a powdery substance[.]" The prosecutor asked Detective Bell whether he recognized the items in the exhibit, and Detective Bell responded in the affirmative. Detective Bell testified that he recognized the items in the exhibit from the sale involving Wheeler on September 21, 2015. Significantly, the prosecutor asked Detective Bell whether the items in the exhibit appeared to be in the

same or similar condition as when he observed them on September 21, 2015. Detective Bell answered in the affirmative.

As a witness for the State, Sharma, the chemist, was asked whether she had analyzed a substance that was associated with Central Complaint Number 6150909547[1]—*i.e.*, the Central Complaint Number on Detective Bell's report. The prosecutor showed Sharma an exhibit that would ultimately be marked as State's Exhibit Number 8, which Sharma identified as a "Drug Analysis Report Form" that she had signed.[2] Sharma testified Central Complaint Number 6150909547 was associated with State's Exhibit Number 8.

The prosecutor showed Sharma what had been marked as State's Exhibit Number 7—*i.e.*, the exhibit that, according to Detective Bell, included a "clear [] Ziploc baggie" with "a powdery substance[.]" Sharma explained that she recognized State's Exhibit Number 7 because her initials were on it. Sharma testified that State's Exhibit Number 7 included a photograph, a number, and the substance that was to be analyzed. Sharma testified that, when she received State's Exhibit Number 7, it was sealed. According to

---

[1]The prosecutor asked Sharma about Central Complaint Number 615090909547, inadvertently adding an extra "09."

[2]The Drug Analysis Report Form was originally marked as State's Exhibit Number 7. Subsequently, the prosecutor stated: "Your Honor, just for clarification, the State will amend the State's exhibit number from Number 7 to Number 8." The prosecutor then showed Sharma another exhibit that was marked as State's Exhibit Number 7, which Sharma identified as a package with a substance that was to be analyzed. After questioning Sharma about the package, the prosecutor showed Sharma an exhibit that was marked as State's Exhibit Number 8, which Sharma identified as a "Drug Analysis Report Form" that she had signed. These circumstances indicate that, inadvertently, both the package and the Drug Analysis Report Form were originally marked as State's Exhibit Number 7. Afterward, the prosecutor changed the State's Exhibit Number on the Drug Analysis Report Form from 7 to 8.

Sharma, State's Exhibit Number 7 included two items: an item with two orange heat-sealed Ziploc bags with a tan "rock substance[,]" and an item with "one clear slash blue double print; that is, one side was clear and the other side had the print, very small Ziploc bag containing tan [] colored rock substance."

Sharma testified that, according to the chain of custody report, the laboratory received State's Exhibit Number 7 on September 22, 2015 at 4:59 a.m.—*i.e.*, within fourteen hours of 3:25 p.m. the previous day, when Detective Bell completed his report. Sharma testified that, as to State's Exhibit Number 7, she had no record of a "discrepancy form," which she would have completed if the items did not match the descriptions that Detective Bell had provided. Sharma testified that she analyzed the substances that were associated with Central Complaint Number 6150909547, and that both items contained heroin.

The circuit court ultimately admitted State's Exhibit Numbers 7 and 8 into evidence. The circuit court concluded that the State had offered sufficient evidence for the jury to find that the heroin that was included in State's Exhibit Number 7 was the suspected heroin that Detective Bell had bought.[3] The circuit court determined that the State had accounted for Detective Bell's custody of the suspected heroin until he returned to police headquarters. The circuit court noted that a different officer submitted the suspected heroin to the Evidence Control Unit. The circuit court stated that, the following day, "the chain [of custody] properly pick[ed] up in the [crime] lab from" the Evidence Control Unit. The

---

[3]The circuit court inadvertently referred to State's Exhibit Number 6.

circuit court stated that the gap in the chain of custody occurred when the suspected heroin was in police custody, not in "some unknown location[.]" The circuit court stated that, within twenty-four hours of the sale of the suspected heroin, Sharma tested the suspected heroin that matched the description that Detective Bell had provided.

On July 3, 2017, the Court of Special Appeals affirmed the circuit court's judgments. See Wheeler v. State, 233 Md. App. 265, 267, 163 A.3d 843, 844, cert. granted, 456 Md. 80, 171 A.3d 611 (2017). As a threshold matter, the Court of Special Appeals stated: "Like other evidentiary rulings, determinations of the adequacy of the chain of custody are left to the sound discretion of the trial court, and we review those rulings for abuse of discretion." Id. at 274, 163 A.3d at 848 (citation omitted). Addressing the merits, the Court of Special Appeals held "that the [circuit] court did not abuse its discretion in admitting the drug evidence, for there was sufficient evidence of a reasonable probability to establish that the [heroin that was] analyzed and presented at trial" was the suspected heroin that Detective Bell had bought and seized. Id. at 277, 163 A.3d at 850. The Court of Special Appeals explained:

> Given the unique particularities of the packaging of the [suspected heroin]—two orange topped Ziploc baggies and one clear baggie with blue writing on it—which were placed in an intact heat[-]sealed packaging bag, the chance of misidentification was small. Additionally, the [Central Complaint N]umber [that] Detective Bell placed on all the documents was the same [Central Complaint N]umber [that was] placed on the sealed package containing the [suspected heroin]. Also, Detective Bell made only the one drug purchase that day. Moreover, the timing of when Detective Bell returned to the police station, when he began and finished his report, and when the items were retrieved from the laboratory all logically correspond. Thus, the chance that the [suspected heroin that had been] seized by Detective Bell w[as] not the [heroin that had been] analyzed by the chemist is unlikely and remote.

Although the gaps in knowledge between when the [suspected heroin was] given to the packaging/submitting agent and when the chemist picked up the [suspected heroin] may have been filled in if the packaging/submitting officer had testified, this did not compel a ruling as a matter of law that the proper chain of custody had not been shown. Rather, it allowed [Wheeler's] counsel to argue in closing that the jury should not credit the drug evidence because of the gap in the chain of custody. Because the evidence presented by the State suggests that it is unlikely that tampering undermined the integrity of the [suspected heroin], we are persuaded that the State provided sufficient evidence of a reasonable probability to establish the chain of custody of the [suspected heroin].

Id. at 277-78, 163 A.3d at 850.

Before us, as to the standard of review, Wheeler contends that the Court of Special Appeals erred in reviewing the circuit court's admission of the suspected heroin and Drug Analysis Report Form for abuse of discretion, as opposed to determining whether the circuit court legally erred. The State responds that a trial court exercises discretion in determining whether the State has proven a chain of custody. As to the merits, Wheeler asserts that the circuit court erred and/or abused its discretion in admitting the heroin because Trojan did not testify. The State responds that, under this case's circumstances, CJ §§ 10-1002 and 10-1003 did not require exclusion of the suspected heroin.

I would hold that an appellate court reviews for abuse of discretion a trial court's ruling as to whether the State complied with CJ §§ 10-1002 and 10-1003. As to the merits, I would conclude that, where a defendant makes a timely demand for the presence of all persons in the chain of custody of drug evidence pursuant to CJ § 10-1003(a)(1), and the State does not arrange for the packaging officer's presence at trial, the State may offer direct or circumstantial evidence of the packaging officer's actions, and the drug evidence

- 7 -

is admissible under CJ § 10-1002(b)(1) where such evidence establishes that the drug evidence was in the same or substantially the same condition when it was examined by the chemist as it was when it was seized.

Maryland appellate courts have long held that circumstantial evidence is of the same quality as direct evidence. See, e.g., State v. Manion, 442 Md. 419, 431-32, 112 A.3d 506, 513 (2015) ("[G]enerally, proof of guilt beyond a reasonable doubt based in whole or in part on circumstantial evidence is no different from proof of guilt based on direct eyewitness accounts." (Cleaned up)). Where a defendant demands the packaging officer's presence, the State's failure to produce the packaging officer's presence does not necessarily preclude admissibility under CJ § 10-1002(b)(1). The State can still establish the integrity of drug evidence by offering direct evidence of the packaging officer's actions—*i.e.*, testimony of witnesses who saw the packaging officer handle the evidence. Here, however, no witness testified to seeing Trojan package the suspected heroin, label the package, and/or submit it to the Evidence Control Unit. Nonetheless, in my view, the suspected heroin was admissible under CJ § 10-1002(b)(1) as the testimony of the seizing officer and the chemist, combined with the condition of the evidence, constituted sufficient circumstantial evidence that the drugs were in the same condition when received by the chemist as they were when they were seized. I agree with the State that CJ §§ 10-1002 and 10-1003 do not contain exclusionary provisions, and thus do not require a trial court to exclude drug evidence where the State does not strictly comply with CJ §§ 10-1002 and 10-1003.

As to the standard of review, no reported Maryland opinion specifically identifies

the standard of review of a trial court's ruling on the admissibility of evidence under CJ § 10-1002. In multiple reported opinions, however, the Court of Special Appeals has indicated that "abuse of discretion" is the standard of review of a trial court's ruling as to a chain of custody. See Martin v. State, 78 Md. App. 541, 548, 554 A.2d 429, 433, cert. denied, 316 Md. 428, 559 A.2d 790 (1989) ("Resolution of [a] question [as to chain of custody] rests with the sound discretion of the trial [court]." (Cleaned up)); Wheeler, 233 Md. App. at 274, 163 A.3d at 848 ("Like other evidentiary rulings, determinations of the adequacy of the chain of custody are left to the sound discretion of the trial court, and we review those rulings for abuse of discretion." (Citing Easter v. State, 223 Md. App. 65, 74-75, 115 A.3d 239, 244, cert. denied, 445 Md. 488, 128 A.3d 52 (2015)).

In Easter, 223 Md. App. at 75, 115 A.3d at 244, the Court of Special Appeals stated that, in Nixon v. State, 204 Md. 475, 483, 105 A.2d 243, 247 (1954), this Court "review[ed a] trial court's ruling excluding evidence based on inadequate chain of custody for an abuse of discretion[.]" In Nixon, id. at 483, 480, 105 A.2d at 247, 245-46, this Court held that a trial court abused its discretion in excluding the testimony of a chemist, who would have testified that red fibers that were found on a "waxer handle" matched fibers from the defendant's red shirt. As noted above, the standard of review of a trial court's ruling on the admissibility of evidence under CJ § 10-1002 is a matter of first impression. This Court applied the "abuse of discretion" standard to an issue as to a chain of custody in Nixon, 204 Md. at 483, 105 A.2d at 247. Although that case did not involve an issue as to CJ §§ 10-1002 and 10-1003, whose earliest predecessors the General Assembly had not yet enacted, Nixon is instructional. And, generally, admission of evidence is subject to review

- 9 -

for abuse of discretion. See, e.g., Curtis Maurice Lopez v. State, ___ Md. ___, ___ A.3d ___, No. 11, Sept. Term, 2017, 2018 WL 1531071, *7 (Md. Mar. 29, 2018) ("Typically a trial judge's decision to admit certain evidence is reviewed for abuse of discretion." (Citation omitted)); Bernadyn v. State, 390 Md. 1, 7, 887 A.2d 602, 606 (2005) ("We review rulings on the admissibility of evidence ordinarily on an abuse of discretion standard." (Citation omitted)).

As to the merits, Wheeler contends that the circuit court erred and/or abused its discretion in admitting the suspected heroin because Trojan, the packaging officer, did not testify. In pertinent part, the State responds that Detective Bell gave detailed testimony about how he obtained State's Exhibit Number 7, including descriptions of the baggies and their contents. The State asserts that Sharma testified that she received the suspected heroin one day after Detective Bell seized it, that she tested the suspected heroin in State's Exhibit Number 7, and that the items in State's Exhibit Number 7 matched Detective Bell's descriptions. The State's position essentially is that there is sufficient evidence to demonstrate that the drugs that were recovered by Detective Bell, the seizing officer, were appropriately packaged and passed on to Sharma, the chemist, without tampering. I agree.

As to reports by chemists or analysts who perform tests, CJ § 10-1001 provides:

For the purpose of establishing that physical evidence in a criminal or civil proceeding constitutes a particular controlled dangerous substance under Title 5 of the Criminal Law Article, a report signed by the chemist or analyst who performed the test or tests as to its nature is prima facie evidence that the material delivered to the chemist or analyst was properly tested under procedures approved by the Maryland Department of Health, that those procedures are legally reliable, that the material was delivered to the chemist or analyst by the officer or person stated in the report, and that the material was or contained the substance therein stated, without the necessity of the

- 10 -

chemist or analyst personally appearing in court, provided the report identifies the chemist or analyst as an individual certified by the Maryland Department of Health, the Department of State Police, the Baltimore City Police Department, or any county police department employing analysts of controlled dangerous substances, as qualified under standards approved by the Maryland Department of Health to analyze those substances, states that the chemist or analyst made an analysis of the material under procedures approved by that department, and also states that the substance, in the opinion of the chemist or analyst, is or contains the particular controlled dangerous substance specified. Nothing in this section precludes the right of any party to introduce any evidence supporting or contradicting the evidence contained in or the presumptions raised by the report.

CJ § 10-1002, concerning the chain of custody, provides:

(a) In this part:

     (1) "Chain of custody" means:
          (i) The seizing officer;
          (ii) The packaging officer, if the packaging officer is not also the seizing officer; and
          (iii) The chemist or other person who actually touched the substance and not merely the outer sealed package in which the substance was placed by the law enforcement agency before or during the analysis of the substance; and

     (2) "Chain of custody" does not include a person who handled the substance in any form after analysis of the substance.

 (b)(1) For the purpose of establishing, in a criminal or civil proceeding, the chain of physical custody or control of evidence consisting of or containing a substance tested or analyzed to determine whether it is a controlled dangerous substance under Title 5 of the Criminal Law Article, a statement signed by each successive person in the chain of custody that the person delivered it to the other person indicated on or about the date stated is prima facie evidence that the person had custody and made the delivery as stated, without the necessity of a personal appearance in court by the person signing the statement.

     (2) The statement shall contain a sufficient description of the material or its container so as to distinguish it as the particular item in question and shall state that the material was delivered in essentially the same condition as received.

- 11 -

(3) The statement may be placed on the same document as the report provided for in § 10-1001 of this part.

(4) Nothing in this section precludes the right of any party to introduce any evidence supporting or contradicting the evidence contained in or the presumption raised by the statement.

And, CJ § 10-1003 provides:

(a)(1) In a criminal proceeding, the prosecution shall, upon written demand of a defendant filed in the proceedings at least 5 days prior to a trial in the proceeding, require the presence of the chemist, analyst, or any person in the chain of custody as a prosecution witness.

(2) The provisions of §§ 10-1001 and 10-1002 of this part concerning prima facie evidence do not apply to the testimony of that witness.

(3) The provisions of §§ 10-1001 and 10-1002 of this part are applicable in a criminal proceeding only when a copy of the report or statement to be introduced is mailed, delivered, or made available to counsel for the defendant or to the defendant personally when the defendant is not represented by counsel, at least 10 days prior to the introduction of the report or statement at trial.

(b) Nothing contained in this part shall prevent the defendant from summoning a witness mentioned in this part as a witness for the defense.

In Best, 79 Md. App. at 258, 249, 556 A.2d at 709-10, 705, the Court of Special Appeals held that a trial court did not err in admitting drug evidence where the State did not call a crime lab technician as a witness. On two occasions, a law enforcement officer removed packages of suspected drugs from a narcotics vault, carried them to a crime lab, and gave them to the technician. See id. at 257, 556 A.2d at 709. The officer remained in the crime lab, and watched as the technician opened the packages, examined the suspected drugs, confirmed that they matched the descriptions in the respective chain of custody forms, and placed the suspected drugs in the crime lab's vault. See id. at 258, 556 A.2d at

- 12 -

709. The Court of Special Appeals concluded that the technician "was simply not an indispensable link in this chain of custody, whose presence was mandated. The chain was complete without him." Id. at 258, 556 A.2d at 709. The Court explained that either the officer or the technician could have testified about what happened to the suspected drugs when the technician handled them, and that having both the officer and the technician testify would have been "redundant." Id. at 258, 556 A.2d at 709.

In Best, id. at 253, 556 A.2d at 707, the Court stated that Md. Code Ann., Cts. & Jud. Proc. (1974) ("CJ (1974)") §§ 10-1001 and 10-1002 "provide[d] evidentiary shortcuts" for the State to employ, whereas CJ (1974) § 10-1003 "spell[ed] out the exceptions to those shortcuts."[4] The Court observed that "[t]he overall purpose of" CJ (1974) §§ 10-1001 to 10-1003 "was to make it easier to introduce physical evidence"— i.e., "to facilitate the admission of evidence[,] and not to require the exclusion of evidence[.]" Id. at 251, 252, 556 A.2d at 706. The Court explained:

> There is not the remotest suggestion of any legislative intent to make the admissibility of "real" evidence[,] or the proof of a chain of custody[,] more difficult than it had been before the passage of [CJ (1974) §§ 10-1001 to 10-1003]. The three closely related sections, read in conjunction with each other, clearly facilitate admissibility (subject to the two exceptions) rather than create some new ground for exclusion. When the defendant, pursuant to [CJ (1974)] § 10-1003, demands the production of certain witnesses, the State may not resort to the documentary shortcuts[,] but must follow routine practice [of proving that there was no reasonable probability of tampering]. When the exceptions apply, the State is no better off than it was before [CJ (1974) §§ 10-1001 to 10-1003] eased its burden of production. In no event, however, is the State in a more difficult position than it had been in prior to [CJ (1974) §§ 10-1001 to 10-1003].

---

[4]CJ (1974) §§ 10-1001 to 10-1003 are the earliest predecessors of CJ §§ 10-1001 to 10-1003.

- 13 -

Id. at 253-54, 556 A.2d at 707.

The Court summarized its approach to interpreting CJ (1974) §§ 10-1001 to 10-1003 as follows:

> [O]ur concern is with the ultimate integrity of the physical evidence. In the service of that concern, the State should establish every important link, perhaps even every link, in the chain of custody rather than bridge gaps, large or small, with a "leap of faith." In the present case, there were no missing links[,] and, therefore, no leaps of faith were required.

Id. at 256-57, 556 A.2d at 709.

In Thompson v. State, 80 Md. App. 676, 685, 677, 566 A.2d 126, 131, 126 (1989), the Court of Special Appeals held that the State established a chain of custody of suspected drugs where the seizing officer died before trial. In Thompson, id. at 677, 566 A.2d at 127, two law enforcement officers arrested the defendant. In the other officer's presence, one of the officers seized vials of suspected drugs from the defendant. See id. at 677, 566 A.2d at 127. A packaging officer testified that the seizing officer brought the suspected drugs to an evidence control unit. See id. at 684, 677-78, 566 A.2d at 130, 127. A chemist testified that the suspected drugs were delivered to a crime lab, where the chemist analyzed them. See id. at 684, 678, 566 A.2d at 130, 127. At a suppression hearing, the officer who was present when the since-deceased officer seized the suspected drugs testified that the suspected drugs, as seen in a photograph, appeared to be in the same condition that they were in when he saw them on the date of the defendant's arrest. See id. at 679, 566 A.2d at 127.

The Court of Special Appeals concluded that the since-deceased seizing officer's presence was not necessary to establish the chain of custody. See id. at 685, 566 A.2d at

130-31.  The Court observed that the State "produced everything that [the seizing officer] did[,] and verified what was submitted through" the other officer who arrested the defendant.  Id. at 685, 566 A.2d at 130.  The Court explained that "the legislative intent in adopting [CJ (1974)] § 10-1001 was to accelerate the trial of cases where there is no allegation that the evidence has been either purposefully adulterated or mistakenly substituted, by dispensing with the requirement that the chemist appear in court."  Id. at 682-83, 566 A.2d at 129.  The Court stated that CJ (1974) § 10-1002 "ha[d] the same purpose in expediting the trial of cases by eliminating from the chain of custody those persons peripherally or routinely involved in the handling or transportation of the evidence."  Id. at 683, 566 A.2d at 129.  The Court stated that CJ (1974) § 10-1003's "purpose was to assure the reliability of evidence offered in a criminal case."  Id. at 683, 566 A.2d at 130.  The Court noted that CJ (1974) § 10-1003 was also intended "to protect a defendant's right of confrontation in drug cases[.]"  Id. at 683, 566 A.2d at 130.  The Court acknowledged that a defendant could make a demand pursuant to CJ (1974) § 10-1003 either "because of a firm belief that he [or she] can successfully refute or cast doubt upon the allegations made," or simply "to drag out the trial and inconvenience everyone involved."  Id. at 683, 566 A.2d at 130.

The Court rejected the defendant's contention that CJ (1974) § 10-1003 was "a technical rule etched in stone requiring either the production of three live witnesses or forfeiture of the evidence upon which the prosecution is founded."  Id. at 683, 566 A.2d at 130.  In other words, CJ (1974) § 10-1003 "was not intended to be an exclusionary rule."  Id. at 683, 566 A.2d at 130.  The Court explained that the State "was no better off than it

was before [CJ (1974) §§ 10-1001 to 10-1003] eased its burden of production; the enactment of [CJ (1974)] § 10-1003 cannot logically be construed to place it in a more difficult position." Id. at 685, 566 A.2d at 131. The Court explained that, if it agreed with the defendant's contention that a deceased person in the chain of custody makes it impossible for the State to comply with CJ (1974) § 10-1003, "the message to drug dealers is clear—kill the seizing officer, or the packaging officer, or the chemist, and you are home free. In today's drug world, the strained meaning suggested by [the defendant] represents a monumental leap backward." Id. at 684, 566 A.2d at 130.

After reviewing the above case law of the Court of Special Appeals and the language of the relevant statutes, I would conclude that, where a defendant makes a timely demand for the presence all persons in the chain of custody of drug evidence pursuant to CJ § 10-1003(a)(1) and the State does not secure the packaging officer's presence at trial, the State may offer direct or circumstantial evidence as to the packaging of the drug evidence, and the drug evidence is admissible under CJ § 10-1002(b)(1) where such evidence establishes that the drug evidence is in the same or substantially the same condition when examined by the chemist as it was when it was seized.

Where a defendant demands the packaging officer's presence, the State's failure to require the packaging officer's presence does not necessarily preclude admissibility under CJ § 10-1002(b)(1). I agree with the determinations of the Court of Special Appeals in Best and Thompson that, for drug evidence to be admissible under CJ § 10-1002(b)(1), the State need not strictly comply with every provision of CJ §§ 10-1002 and 10-1003, so long as the State serves the purpose of CJ §§ 10-1002 and 10-1003 by establishing the integrity

- 16 -

of the drug evidence. See Best, 79 Md. App. at 249, 556 A.2d at 705 ("When[,] in our judgment[,] th[e] undergirding purpose [of guaranteeing the integrity of drug evidence] has clearly been served, we are not about to worry over whether there has been blind and literal obedience to the rule in the tradition of a Prussian drillmaster." (Emphasis omitted)); Thompson, 80 Md. App. at 683, 566 A.2d at 130 ("Th[e] purpose [of CJ (1974) §§ 10-1001 to 10-1003] was to assure the reliability of evidence offered in a criminal case. [They were] not . . . technical rule[s] etched in stone requiring either the production of three live witnesses or forfeiture of the evidence upon which the prosecution is founded.").

Even in the absence of the packaging officer, the State can still establish the integrity of drug evidence by offering direct or circumstantial evidence as to the condition of the drug evidence. This Court has long held that there is no difference between circumstantial evidence and direct evidence. See, e.g., Manion, 442 Md. at 431-32, 112 A.3d at 513 ("[G]enerally, proof of guilt beyond a reasonable doubt based in whole or in part on circumstantial evidence is no different from proof of guilt based on direct eyewitness accounts." (Cleaned up)).

In Best, 79 Md. App. at 258, 556 A.2d at 709, the Court of Special Appeals held that "[t]he integrity of [drug] evidence was not in doubt" where a crime lab technician did not testify, but a law enforcement officer testified that he watched the technician handle the drug evidence. Similarly, in Thompson, 80 Md. App. at 684-85, 677-78, 566 A.2d at 130-31, 127, the Court of Special Appeals concluded that the State established a chain of custody of drug evidence where the seizing officer did not testify, but an officer who was present during the seizure, as well as the packaging officer, testified about what the seizing

officer did with the drug evidence.

Here, to be sure, the State did not establish the chain of custody of the suspected heroin through Trojan's testimony or by offering direct evidence of Trojan's actions. Nonetheless, Detective Bell, the seizing officer, testified that, on the afternoon of September 21, 2015, he returned to the police headquarters with the suspected drugs, obtained a Central Complaint Number, and completed his report. Testimony established that, on the morning of September 22, 2015, the crime lab received the suspected heroin. Detective Bell expressly testified that he recognized the heroin that was offered into evidence at trial from the sale involving Wheeler on September 21, 2015, that the heroin appeared to be in the same or similar condition as when he saw it on September 21, 2015, and that he had made only one seizure on that day. Detective Bell testified that he purchased two orange Ziploc bags of suspected heroin, and one clear Ziploc bag with blue writing of suspected heroin. Sharma, the chemist, testified that State's Exhibit Number 7, the evidence that she analyzed, was associated with Central Complaint Number 6150909547, the same number that was associated with Detective Bell's report, and that the exhibit contained, as Item 1, two orange heat-sealed Ziploc bags with a tan rock-like substance and, as Item 2, one clear "slash" blue double print Ziploc bag with a tan rock-like substance. Sharma testified that she had not completed a discrepancy report, which she would have done had the evidence not matched the description provided by Detective Bell. Both Detective Bell and Sharma described the evidence as consisting of three Ziploc bags—two orange-colored, and one clear with blue writing.

In sum, I would hold that the suspected heroin was admissible under CJ § 10-

- 18 -

1002(b)(1) because, although Wheeler made a timely demand for the presence all persons in the chain of custody of drug evidence pursuant to CJ § 10-1003(a)(1) and the packaging officer was unavailable, the State demonstrated that the drugs were in the same or similar condition at the time that they were received by the chemist as when recovered by the seizing officer. On brief, Wheeler does not raise an allegation that the drugs have been tampered with, or that any circumstance indicates an irregularity in the chain of custody or the condition of the drugs when received by the chemist. Wheeler simply argues that the absence of the packaging officer must result in exclusion of the evidence. Put simply, in my view, CJ §§ 10-1002 and 10-1003 do not indicate that a trial court must exclude drug evidence where the State does not strictly comply with CJ §§ 10-1002 and 10-1003.

For the above reasons, respectfully, I concur.

Judge Adkins has authorized me to state that she joins in this opinion.